**UNITED STATES of America,**
**Appellee,**

v.

**Ronald X. PLEASANT, Appellant.**

**No. 72–1358.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1972.

Decided Dec. 8, 1972.

---

Irvin H. Mason, pro se.

Dwight A. McKabney, Gen. Counsel, John L. Haines, Jr., Balboa Heights, Canal Zone, for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

James L. Crabtree, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, ROSS, Circuit Judge, and VAN PELT, Senior District Judge.*

MATTHES, Chief Judge.

Ronald X. Pleasant, having been convicted of a felony,[1] was found guilty of possessing a firearm, to wit, a shotgun, which was travelling in and affecting interstate commerce in violation of § 1202(a)(1), Title 18 Appendix U.S.C.[2]

Pleasant, hereinafter referred to as appellant, has appealed from the judgment of conviction entered on the jury's verdict.[3]

---

\* District of Nebraska, sitting by designation.

1. The indictment alleged and the evidence proved that Pleasant had been convicted of robbery in September, 1961, in the state of Ohio.

2. Section 1202(a)(1) provides in pertinent part that any person who has been convicted by a court of the United States or of a state, of a felony and who receives, possesses, or transports in commerce or affecting commerce, any firearm shall be fined not more than $10,000 or imprisoned not more than two years, or both.

3. Imposition of sentence was suspended and appellant was placed on probation for a period of three years.

This appeal presents three contentions which we set forth and consider in inverse order to appellant's designation of the contentions in his brief.

(1) The court erred in denying the motion to suppress the shotgun and admitting it into evidence;

(2) The evidence was insufficient to establish that appellant possessed a firearm as set forth and described in the indictment;

(3) The evidence was insufficient to show that the firearm was travelling in and affecting interstate commerce.

## I. MOTION TO SUPPRESS

Appellant sought suppression of the shotgun on the grounds that it was seized without a warrant as a result of an illegal arrest and illegal search. An evidentiary hearing held prior to the trial disclosed these undisputed facts.[4] Appellant, driving an automobile, appeared at a service station operated by James L. Broyles in Carl Junction, Missouri, which is near the Missouri-Kansas border, on the afternoon of July 17, 1971. At the time, he was in possession of the shotgun described in the indictment. He attempted to purchase some tires from Broyles and proferred a credit card issued to one William X. Hawkins, in payment of the tires. Broyles, pursuing his custom where the sale exceeded $10.00, contacted the National Data Credit Card Service and was advised not to make the sale and "to pick up the card as a possible stolen card."[5] Thereupon, Broyles refused to sell the tires, but appellant declined to surrender, the credit card to Broyles. Broyles did, however, transport appellant to the bus station in Joplin, Missouri, approximately eight miles from Carl Junction. The shotgun was placed by appellant on the back seat of Broyles automobile where it

remained during the trip to the bus station. Broyles observed the butt and muzzle of the gun and that the remainder of it was wrapped in a "sweater or coat or something." Broyles also observed the gun in appellant's possession as he walked from Broyles' automobile to the Greyhound Bus Station in Joplin, Missouri.

In the meantime, Chief of Police Smith in Carl Junction had been informed of the credit card incident, given a description of appellant—that he was in possession of the shotgun, and that he could be located at the Greyhound Bus Station in Joplin. This information was transmitted by Chief Smith to police officer Roberts of Joplin, Missouri. Roberts proceeded immediately to the Greyhound Bus Station, learned that appellant had already boarded a bus and that the bus probably was at the Continental Trailways terminal in Joplin. At the request of the Carl Junction police the bus remained at the Continental Trailways terminal until Roberts had arrived there. Upon arriving, the officer boarded the bus, saw appellant, placed him under arrest, and requested that he leave the bus. Simultaneously, the officer observed a duffle bag on the seat next to appellant and also saw the shotgun in the baggage rack. When appellant stood, he reached for the shotgun and Roberts "stopped him and [I] took possession of the shotgun." Thereafter, and upon learning that appellant had been previously convicted of a felony and believing that the gun was being transported in interstate commerce, the indictment was returned.

The district court, for reasons enunciated in its memorandum opinion, suppressed all of the evidence (duffle bag and its contents) seized by the police officer except the shotgun.[6] Notwithstand-

---

4. Appellant did not testify at the hearing to suppress or at the trial on the merits.

5. It was later developed that the card had not been stolen, and that William X. Hawkins, to whom it was issued, was the brother of appellant, and apparently

had given appellant permission to use the card.

6. Under Section 561.415 Mo.Stat.V.A.M.S. it is a misdemeanor to misuse a credit card for the purchase of goods having a value of less than $100.00. In Missouri,

ing the court's holding that there was no probable cause to arrest for the credit card incident, the court sustained the seizure of the shotgun, predicating its holding on the teachings of the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court reasoned that:

> "In the circumstances of this case, the information passed on to Officer Roberts from Mr. Broyles through Chief Smith was sufficient to establish a reasonable suspicion that a crime had been or was about to be committed. Officer Roberts had received reliable information that the defendant was armed, and had possibly committed or was about to commit criminal acts, this court finds that the officer did not act unreasonably in seizing the firearm in his plain view which the defendant was about to grasp. As stated by the Supreme Court in Terry v. Ohio, *supra* at page 24; [88 S.Ct. 1868, 20 L.Ed.2d 889] 'When an officer is justified in believing that an individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.' And, it is obvious from the evidence adduced during the hearing that the shotgun was seized by the officer for the purpose of protecting himself from its use against him by the defendant."

Admittedly, the facts before us are distinguishable from the stop and frisk situation in Terry. Appellant emphasizes that Terry cannot apply because it requires reasonable inquiries initially before an officer may frisk a subject and that here Officer Roberts admittedly made no inquiry. While a reading of Terry lends itself to this interpretation, the later Supreme Court case of Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) has, in our view, expanded upon the language of Terry. In Adams, a police officer, after having been told by an informant that a man sitting in a car was carrying narcotics and a concealed weapon at his waist, approached the car and requested the occupant to open the door. Instead, the man rolled down the window. Thereupon, the officer reached inside the man's coat and seized the gun which was where the informant had said it was. The police officer had made no prior inquiries; however, the Supreme Court upheld the search and seizure as proper behavior under Terry v. Ohio, because the police officer, having been told the man was armed, had a reasonable fear for his safety.

The same conclusion can be drawn from the facts in this case. Officer Roberts knew that appellant was in possession of the gun, that he was attempting to leave Joplin, that he had purchased a bus ticket for Springfield, Missouri, and that he had boarded the bus and had the gun in his possession. When Roberts confronted appellant and observed the shotgun, there was no need for him to investigate to determine whether appellant might be armed. It would have been foolhardy indeed if the officer had not seized the gun and taken it into his possession. The argument is made that the officer's own testimony suggests that he did not consider himself in danger when he seized the gun. The record does not bear out this contention. Roberts testified only that when appellant reached for the gun it was not "in the act of force or anything like that." This statement taken by it-

---

an arrest for a misdemeanor is invalid unless committed in the presence of the officer. United States v. Bonds, 422 F.2d 660 (8th Cir. 1970). The attempted purchase of the tires involved less than $100.00; hence the district court properly ruled there was not probable cause to arrest for the suspected violation of § 561.415 Mo.Stat., *supra*.

self does not indicate whether, in considering the totality of circumstances, Officer Roberts felt himself to be in danger. It seems to us that the seizure of the gun by the officer strongly supports the conclusion that he considered the gun to be a dangerous weapon and one that could be used by appellant to harm him or others.

Appellant also contends that in order for the seizure to be upheld under *Terry*, Officer Roberts would have had to specifically testify that he considered himself to be in danger when he seized the weapon. We do not feel that such specific testimony is required under *Terry* where, as here, the firearm was clearly visible to the officer. Such testimony might be required under *Terry* to justify an invasion of the person by a search; but here there was no search. Officer Roberts only seized the firearm and, in our view, an officer would almost as a reflex feel himself to be in danger when a person he is questioning regarding possible criminal activity possesses a visible firearm.

In sum, we sustain the court's action in declining to suppress the gun. In the final analysis cases involving the *Terry* doctrine must be considered and decided upon the peculiar facts presented. As we have observed, the Supreme Court itself has extended the *Terry* doctrine in *Adams* and courts of appeals have applied *Terry* in different factual situations. *Cf.* United States v. Wickizer, 465 F.2d 1154 (8th Cir. 1972); United States v. James, 452 F.2d 1375, 1377 (D.C. Cir. 1971); United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970).

## II.

■■■■ Appellant advances a technical argument in support of his claim that the evidence was insufficient as a matter of law to show that he had possession of a firearm as described in the indictment. In this connection, as shown above, the indictment charged appellant in possession of a firearm, described as a shotgun. Appellant seemingly argues that inasmuch as the statute proscribes possession of a firearm, the indictment charging possession of a shotgun constitutes a vital departure. An indictment must contain the elements of the offense intended to be charged, and must sufficiently apprise the defendant of what he must meet. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932). It is not to be construed in a technical manner, but rather according to common sense. 8 J. Moore, Federal Practice ¶ 704 at 7–19 (2d ed. 1972). Certainly, a reasonable interpretation of the indictment leads to the conclusion that appellant was charged with the possession of a firearm. His contention that there was no proof of possession of a shotgun because it was inoperable at the time of the seizure also is without merit. The statute defines a firearm as a weapon which is, or is designed to, or may readily be converted to expel a projectile. § 1202(c)(3). Appellant interprets this to mean that the government had to prove under the indictment that the seized gun could immediately have been made operable and that appellant possessed the pieces necessary to make it so. Since these pieces had been suppressed the contention is that there was no way for the government to meet the burden. Appellant overlooks the fact that Congress specifically stated that the statute applies to inoperable firearms as well. Appellant's argument that the government had to prove that appellant had the present capacity at the time of the seizure to convert the firearm into an operable weapon is erroneous. *See* United States v. 16,179 Molso Ital. 22 Cal. Winlee D.C.S. Guns, 314 F.Supp. 179 (E.D.N.Y.1970).

We rule this contention against the appellant.

## III.

■■■ Appellant's claim that the evidence fails to show directly or by inference that the shotgun was travelling in and affected interstate commerce must be sustained. The Supreme Court in United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), held

that the phrase "in commerce or affecting commerce" modifies the words "receives" and "possesses" as well as the word "transports" in the statute, so that the government must prove as an element of the offense that possession of the firearm was in commerce or affecting commerce. Elaborating somewhat upon this holding, the Court stated by way of dictum:

" . . . we add a final word about the nexus with interstate commerce which must be shown in individual cases. The Government can obviously meet its burden in a variety of ways. . . . For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce."

404 U.S. at 350, 92 S.Ct. at 524.

The government, relying upon the quoted statement, argues that evidence of the following was sufficient.

1. That the owner of the automobile was located in Cincinnati, Ohio;

2. That the vehicle had been rented through a rental agency;

3. That appellant had made a statement that he had to be in Dallas that night (July 17, 1971);

4. His inquiry concerning airplane connections between Joplin and Springfield;

5. His arrest on a Missouri-Kansas-Oklahoma Company bus;

6. That the Continental Trailways Bus Terminal serviced interstate traffic;

7. That the bus would travel from Joplin to Springfield, Missouri on an interstate highway.

We disagree and hold for the reasons stated below that the evidence leaves too much to speculation. There was no proof of the following: (a) that appellant's journey originated in Ohio; (b) that he took possession of the shotgun in Ohio and had travelled from that state to Carl Junction, Missouri; (c) that the Continental Trailways Bus Terminal serviced interstate traffic; (d) that the bus boarded by appellant travelled from one state to another; (e) that the bus would travel over an interstate highway between Joplin and Springfield, Missouri.[7]

We suspect that there was evidence available to prove a number of the foregoing factors, but the plain fact is that such evidence was not introduced. We do not mean to suggest that if the bus terminal served interstate traffic, and if the bus in question travelled interstate and if it used an interstate highway that proof of these elements would be sufficient, but certainly such evidence would have strengthened the government's case.

Having viewed the evidence in the light most favorable to the government, as we must, we have reached the firm conclusion that the proof presented on the interstate issue is insufficient. We therefore remand and suggest that unless the government can offer evidence warranting a jury to find beyond a reasonable doubt, under appropriate instructions, that the shotgun in question was travelling in or affecting interstate commerce, consideration should be given to dismissing the indictment.

---

7. Although a jury might be warranted in finding that in referring to Dallas, appellant meant Dallas, Texas, again the evidence goes no further than to show that appellant had to be in "Dallas."