**UNITED STATES of America,
Appellee,**

v.

**James MARIHART et al., Appellants.**

**Nos. 73-1326, 73-1327 and 73-1370.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 23, 1973.

Decided March 6, 1974.

Donald W. Sylvester, and Donald E. O'Brien, Sioux City, Iowa, for appellants.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The principal issue on this appeal concerns the extent to which inaccuracies or misrepresentations in an affidavit by a police official vitiates a search warrant issued pursuant thereto.

Defendants James Marihart, Edwin Kinsley and Michael Guerra were convicted by a jury verdict on four counts of violating 18 U.S.C. App. § 1202(a)(1), illegal possession of fire-

arms by previously convicted felons. The defendants were sentenced to two years imprisonment on Counts I, II and III to be served consecutively, and two years imprisonment on Count IV, to run concurrently with the sentence on Count I.

This case was originally set for trial on April 26, 1972. Prior to the trial date, the defendants filed a motion to suppress evidence which was granted by the trial court. On appeal that order was vacated and the cause remanded pursuant to an en banc hearing before this court. United States v. Marihart, 472 F.2d 809 (8 Cir. 1972). Although a part of the factual background of the case is set forth in that opinion, we will recount the facts relevant to the issues presented for our determination on this appeal.

On the evening of October 16, 1971, George Lorenger's residence and firearms dealership was burglarized. Lorenger sold guns in Iowa, Nebraska, South Dakota and California. The four firearms which comprise the four counts of the indictment had been purchased from a dealer in Faribault, Minnesota. On October 17, F.B.I. Special Agent Oxler became apprised of the fact that the defendants might be involved in the Lorenger burglary and were driving a 1962 blue Ford station wagon. Oxler, at this time, was investigating a federal crime of possession of stolen money orders. On October 20, a vehicle matching the description given to Oxler pulled up to a residence and the occupants removed a large cardboard box from the rear of the automobile, which they had difficulty carrying into the residence. After they had vacated the premises, local police officers maintained a watch on the house for three to four hours. During the surveillance, Captain Frank O'Keefe of the Detective Bureau, Sioux City Police Department, based on the information supplied by Oxler and others, obtained a search warrant from a Sioux City Municipal Court Judge.[1] Upon breaking into the residence in execution of the search warrant the police found several rifles and shotguns, including the four guns upon which the indictment rests.

Appellants initially contend that the trial court erred in overruling their motion to suppress evidence. They allege that the affidavit and oral testimony presented by Captain O'Keefe to the issuing magistrate in support of affiant's request for a search warrant contained erroneous information.

Our earlier opinion disposed of the issue as to whether "probable cause" could be found based upon the information presented to the magistrate. We held that "probable cause" existed after applying the tests of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

On this appeal, we are asked to scrutinize again the affidavit and the oral testimony and redetermine the "probable cause" issue in light of evidence adduced at the trial which the defendants allege raises some question as to the accuracy of the information supplied to the issuing magistrate.

During the course of the trial the court granted appellants a hearing on their renewed motion to suppress. They were allowed to present evidence (outside the jury's presence) testing the accuracy of Captain O'Keefe's affidavit and testimony. Special Agent Oxler and other law enforcement officials mentioned by Captain O'Keefe were examined exhaustively with respect to what information they had supplied Captain O'Keefe before his affidavit and testimony were supplied to the magistrate. After receiving the evidence the trial court denied appellants' renewed motion to suppress.

The government contends that since there was no initial showing of wilful

---

[1]. Captain O'Keefe's affidavit and a summary of his testimony before the issuing magistrate is set out in 472 F.2d at p. 810–811.

misrepresentation or bad faith on the part of the affiant, the affidavit (and testimony) in support of the application for the search warrant was not subject to impeachment. Further, that since the trial court did permit appellants during the course of the trial to make inquiry into the accuracy of the affiant, and an examination of the record discloses no material discrepancies, appellants' claim is without merit.

Appellants contend that the record discloses material inaccuracies to such an extent that it can be said that the affiant did not have reasonable grounds for believing the truth of the allegations he made and therefore good faith is lacking. In the alternative they ask that we remand to the district court with directions to ascertain from affiant the exact state of his knowledge at the time of the signing of the affidavit.[2]

The Supreme Court has not passed on the extent to which a court may permit an examination with respect to the validity of a warrant facially valid and when the allegations of the underlying affidavits establish "probable cause." Rugendorf v. United States, 376 U.S. 528, 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Kipperman, "Inaccurate Search Warrant Affidavits As a Ground for Suppressing Evidence," 84 Harv.L. Rev. 825 (1971). We have not taken a definitive position on this issue but have indicated that under appropriate circumstances such an inquiry may be made. United States v. Bridges, 419 F.2d 963, 966, n. 4 (CA8 1969); Hunt v. Swenson, 466 F.2d 863 (CA8 1972); Lowrey v.

United States, 161 F.2d 30, 34 (CA8 1947).[3]

The trial court conducted a hearing in which appellants were permitted to examine into the truthfulness of Captain O'Keefe's affidavit and testimony. Thus we need not now delineate the showing necessary to obtain such a hearing. The trial court weighed the testimony allegedly in conflict with the affidavit and denied the renewed motion to suppress. We are satisfied that there is substantial evidence to support the conclusion reached and no mistake was made. Lowrey v. United States, *supra*; United States v. McNally, 485 F.2d 398, 406 (CA8 1973) Gullett v. United States, 387 F.2d 307 (CA8 1967).

We have not as yet delineated the standards to be applied in testing the validity of a warrant where a hearing has been granted. In United States v. Bridges, *supra*, 419 F.2d at 966 n. 4, we indicated that fraudulent intent and materiality were factors to be considered.

■■ The Seventh Circuit in United States v. Carmichael, *supra* at 2129, 489 F.2d 983, 988, has held as follows:

> * * * Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful. * * * Even where the officer is reckless, if the misrepresentation is immaterial, it did not affect the issuance of the warrant and there is no justification for suppressing the evidence. * * * However, we conclude that if deliberate government perjury should ever be shown, the

---

2. Affiant, Captain O'Keefe, was not called by either party in connection with the renewed motion to suppress made during trial. The parties stipulated as to the affidavit and the testimony given by Captain O'Keefe before the issuing magistrate.

3. At least two circuits have indicated that such a hearing should be held "when there has been an initial showing of falsehood or other imposition on the magistrate." United States v. Dunnings, 425 F.2d 836, 840 (CA2 1969); United States v. Rael, 467 F.2d 333 (CA10 1972). The Seventh Circuit has re-

cently ruled, in an en banc hearing that a defendant is entitled to a hearing to attack a "facially sufficient affidavit" if he initially shows either: "(1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material." United States v. Carmichael, 489 F.2d 983 (No. 71–1492, CA7 October 9, 1973), 14 Cr. L. 2128, 11–14–73. The foregoing rule is limited to testing the credibility of government agents whose affidavits or testimony are before the magistrate.

court need not inquire as to the materiality of the perjury. The fullest deterrent sanctions of the exclusionary rule should be applied to such serious and deliberate government wrongdoing.

The rule we announce today is intended only to test the credibility of government agents whose affidavits or testimony are before the magistrate.

The Fifth Circuit in United States v. Thomas, 489 F.2d 664 (No. 73–1403, CA5 December 19, 1973), 42 LW 2369 has held that "affidavits containing misrepresentations are invalid if the error was (1) committed with an intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally, but the erroneous statement is material to the establishment of probable cause for the search." Accord, United States v. Bowling, 351 F.2d 236, 241–242 (CA6 1965).

We adopt the Seventh Circuit standards [4] and apply them to the case at hand.

We now briefly review the substance of the affidavit and testimony submitted to the issuing magistrate by Captain O'Keefe with particular attention to those portions claimed by appellants to be so inaccurate as to be untruthful.

O'Keefe in his affidavit recited that: the Lorenger home had been burglarized on October 16, 1971 and thirty-three firearms taken; he had received information from a reliable confidential informant that appellants were involved; they were then driving a 1962 blue Ford station wagon, 1971 plates Iowa 47–4556 registered to Ray Magnusson; on October 20, 1971 (the date he obtained the search warrant) he was informed by Special Agent Oxler that the 1962 blue Ford station wagon had stopped at 1807

Jackson Street and three men believed to be the burglars previously named had unloaded a large pasteboard box which with difficulty was carried into the residence indicated. O'Keefe further testified that Special Agent Oxler and Sioux City Police Lieutenant Larson had received similar tips from the same informant; Sergeant Stewart, Sioux City Police, had received an identical tip from another informant. O'Keefe revealed the name of Oxler and Larson's informer to the judge. The judge recognized this informer as a person who had previously supplied reliable information upon which the judge had acted and which proved correct. He relied upon the informant's tip and made no effort to ascertain the credibility of Stewart's informer. The warrant was issued and executed by the police officers who found in the apartment at 1807 Jackson, described in the affidavit, the four guns which are the subject of the indictment.[5]

Appellants' principle claims of inaccuracies in O'Keefe's affidavit and testimony allegedly established by testimony of the officers pursuant to appellants' renewed motion to suppress, are as follows: (1) O'Keefe stated to the magistrate that Special Agent Oxler and Lt. Larson received similar tips from the same informant, whereas Oxler testified that he never told O'Keefe the name of his informant. The record reveals Oxler testified "I would seriously doubt if I named a name. I think from past experience he [O'Keefe] was fully aware who my informant was * * *. We didn't have to name names. It was known as of just a matter of fact between us." (2) Appellants claim Lt. Larson testified he didn't tell O'Keefe the name of his informant. The record reveals his testimony was: "I don't believe so, but I am not sure." (3) Appellants claim O'Keefe erred in stating Ser-

---

4. We agree with the Seventh Circuit that completely innocent misrepresentation should not support suppression even if material. The primary justification for the exclusionary rule is to deter police misconduct. Furthermore, if the officer reasonably believes

facts which facially indicate a crime has been committed, then even if mistaken, he has probable cause for believing a crime has been committed. Carmichael, supra.

5. For further details see 472 F.2d at 810–811.

geant Stewart had called him 3 days before the search warrant was issued, whereas Stewart testified he had no contact with O'Keefe about an informant's tip until the day the warrant was issued. A reading of this transcript, however, reveals Sergeant Stewart, at the time of his testimony, was not certain when he called O'Keefe and that "it is possible" he had called O'Keefe on Sunday, October 17, 3 days before the warrant was issued.

■ Other inaccuracies in a similar vein are urged by appellants. After examining the complete record we are satisfied inaccuracies are peripheral in nature and there were no material misstatements made in connection with the securing of the search warrant. The most that can be said is that the officers exhibited some uncertainty in recollecting when certain conversations with O'Keefe took place which is understandable considering that considerable time had elapsed. We are abundantly satisfied that there were no material misstatements made in securing the warrant and no absence of good faith shown.[6] We are satisfied that the trial court properly overruled the renewed motion to suppress. The remanding of this matter for the interrogation of affiant O'Keefe is unwarranted.

Defendants also contend that the government failed to prove that the firearms in question were moving in interstate commerce or affecting interstate commerce. The United States Supreme Court has held that 18 U.S.C. App. § 1202[7] requires that when a person is charged with receiving or possessing firearms, the government must show that they were moving in interstate commerce or affecting interstate commerce. United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In the *Bass* case, 404 U.S. at 350, 92 S.Ct. at 524, the court stated that the government may show a nexus with interstate commerce in a variety of ways. "For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce."

In United States v. Pleasant, 469 F.2d 1121 (CA8 1972) we held that the government had failed to show directly or by inference that the weapon there involved was traveling in or affected commerce. In so doing we suggested the *type of proof that might be used.* Upon retrial the government offered proof of the kind suggested. We affirmed. United States v. Ronald X. Pleasant, 489 F.2d 1028 (No. 73–1343, CA8 January 9, 1974).

■ We are satisfied that the government's evidence was sufficient to sustain its burden of establishing that the firearms in question possessed by appellants were moving in or affecting commerce. The firearms were purchased from a federally-licensed firearms dealer in Minnesota who sold firearms

---

6. The trial court conducted an in camera hearing during which Special Agent Oxler, Lt. Larson and Sergeant Stewart testified. The transcript thereof was sealed and furnished to this court. It reveals that under order of the court Oxler and Larson each revealed the name of his informant. They were identical. Stewart revealed the name of his informant who was another person. Stewart also stated that after rereading his reports it was true that he had called O'Keefe on Sunday. (This was consistent with O'Keefe's statement.) The testimony indicated the informants were fearful of their lives if their identity was revealed. We do not rely on the in camera hearing but do observe that this testimony further supports the government's claim that no material inaccuracies were stated in support of the application for the search warrant.

7. § 1202. Receipt, possession, or transportation of firearms—
Persons liable; penalties for violation
(a) Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years or, both.

throughout the various states. The particular weapons were shipped from Minnesota to a federally-licensed dealer in Sioux City, Iowa, George Lorenger, who sold firearms in interstate commerce as well as in Iowa. One of the firearms arrived about two weeks prior to the theft, another was stolen the day it was delivered and before it was uncrated. One of the defendants who worked with the other two defendants in secreting the stolen firearms in the apartment where they were seized admitted to the break-in and theft of the weapons from Lorenger, the firearms dealer. ' The foregoing evidence was sufficient to support the jury finding that the weapons were moving interstate and that possession thereof affected commerce. *See,* United States v. Wiley, 478 F.2d 415 (CA8 1973) ; United States v. Glasgow, 478 F.2d 850 (CA8 1973) ; United States v. Mullins, 476 F.2d 664 (CA4 1973) ; United States v. Brown, 472 F. 2d 1181 (CA6 1973).

■ The trial court's jury instruction with respect to whether defendants' possession of the firearms in question was in or affecting commerce was proper [8] and no error was committed in refusing defendants' requested instruction.

Defendants' final contention that the evidence was insufficient to support the jury's finding, as charged, that each of the defendants had previously been convicted of felonies, is without merit and need not be discussed.

Affirmed.

HEANEY, Circuit Judge (dissenting).

I dissent for the reasons set forth in the dissenting opinion in United States v. Marihart, 472 F.2d 809, 816–817 (8th Cir. 1972).

I agree with the majority that the misrepresentations in Captain O'Keefe's affidavit were not material. Thus, I do not believe that it is necessary to decide between the views expressed by the Seventh Circuit in United States v. Carmichael, 489 F.2d 983 (7th Cir. 1973), and the Fifth Circuit in United States v. Thomas, 489 F.2d 664 (5th Cir. 1973). That choice should be made when we are presented with a case in which that issue has some bearing on the outcome. However, because the majority has chosen to express its view at this point, I must state that I view the rule followed by the Fifth Circuit as the preferable one. Under that rule, it makes no difference whether the misrepresentations were intentional or innocent, if, in fact, they were material.

---

8. In determining whether defendants' possession of a firearm was in or affecting commerce, you are to consider only what effect, if any, the defendants' possession of the firearms at the time and place as alleged in the indictment had on interstate commerce, or if it had a demonstrated connection or link with interstate commerce.

If you do not find beyond a reasonable doubt that the possession of firearms by the defendants at the time and place as alleged in the indictment affected interstate commerce or that said possession had a demonstrated connection or link with interstate commerce, then the plaintiff has failed to meet its burden of proof on this issue.