Russell John BERARD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 75–1356.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Oct. 29, 1975.

Certiorari Denied April 5, 1976. See 96 S.Ct. 1511.

Thomas P. Hyland, Des Moines, Iowa, for appellant.

George H. Perry, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.\*

BRIGHT, Circuit Judge.

Appellant-Russell John Berard appeals from his conviction in a nonjury trial for

\* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

possession with intent to distribute marijuana, a non-narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (1970), and for conspiracy to distribute this controlled substance in violation of 21 U.S.C. § 846 (1970). The trial court (Judge William C. Stuart) sentenced defendant to two concurrent three-year prison terms with all but four months suspended.

The defendant's sole attack on his conviction relates to the trial court's refusal to suppress a quantity of marijuana and other evidence seized from defendant's home in Des Moines pursuant to a search warrant. Berard contends that the affidavit supporting the request for the warrant contained several false or misleading material statements and that the warrant was therefore invalid.

After a full hearing on the suppression motion, Judge Stuart rejected Berard's contentions and explained his reasons for denying the motion in a thorough and comprehensive memorandum opinion.

Our review discloses ample support in the record for Judge Stuart's findings which he incorporated in his memorandum opinion. We attach Judge Stuart's ruling as an appendix to this opinion.

Finding no error in the proceedings, we affirm.

### APPENDIX

In the United States District Court for the Southern District of Iowa.

Cr. No. 75–35.

UNITED STATES OF AMERICA,

Plaintiff,

v.

RUSSELL JOHN BERARD,

Defendant.

### RULING

### MOTION TO SUPPRESS

STUART, District Judge.

Defendant's Motion to Suppress crucial evidence in this case came on for hearing March 5, 1975. Defendant contends the factual information furnished the magistrate in support of the issuance of the search warrant for defendant's residence contained material inaccuracies which (1) were intentionally untruthful (2) were recklessly made without regard for their truth or (3) if innocently made, but not considered, left the remaining information insufficient to show probable cause for the issuance of the search warrant.

When the validity of a search warrant is challenged, the burden is on the government to establish its validity by a preponderance of the evidence. *United States v. Matlock* (1974) 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242.

". . . affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca* (1965) 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684; *United States v. Harris* (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723.

"When a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas* (1964) 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723.

An examination of the information for the search warrant in this case must be made with those principals in mind.

Sgt. Brown, the affiant, stated that police officers had personal knowledge of the following:

"That an undercover narcotics officer did buy a quantity of marijuana from J. R. Van Reese on 29 Sept. 74. That the same undercover officer did purchase a

quantity of marijuana from J. R. Van Reese on 2 Oct. 74, and that *this subject did go directly to 914 S. E. Pioneer after the buy was made, carrying recorded serial numbers on the money used to purchase this marijuana. That another police officer had been to the residence of 914 S. E. Pioneer, and has observed John R. Berard have in his possession controlled substances and used these controlled substances in the presence of this police officer. That on the evening of 2 Oct. 74, a police officer did follow J. R. Van Reese's vehicle from the point of the buy directly* to 914 S. E. Pioneer."

The Information for Search Warrant also contained statements made by an informant to the officers as follows:

"That an informant did state that J. R. Van Reese did get his controlled substances from a subject known as 'Ugly John,' that this subject lives in the basement half of 914 S. E. Pioneer. That this informant described the physical person of John R. Berard perfectly when describing 'Ugly John.'

The informant learned of these facts from "personal observation and conversation with J. R. Van Reese, and from being at the residence of 'Ugly John' at 914 S. E. Pioneer."

Defendant claims the underlined portions of this information are inaccurate and misleading and were made intentionally to deceive the judge who issued the search warrant.

The testimony of the officers at the hearing disclosed that the October 2 buy took place in the undercover agent's car at the Burger Chef on Fleur Drive. They then went to Van Reese's residence. Van Reese got out of the car and went into his residence where he remained from 30 to 35 minutes. He then drove his car directly to 914 S. E. Pioneer and entered defendant's apartment.

In *United States v. Marihart* (8th Cir., 1974) 492 F.2d 897, 900 this circuit adopted the Seventh Circuit standards for listing the validity of search warrants containing misrepresentations of fact. The Opinion quotes from *United States v. Carmichael* (7th Cir., 1973) 489 F.2d 983, 988 as follows:

". . . Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful."

". . . Even where the officer is reckless, if the misrepresentation is immaterial, it did not affect the issuance of the warrant and there is no justification for suppressing the evidence . . . However, we conclude that if deliberate government perjury should ever be shown, the court need not inquire as to the materiality of the perjury. The fullest deterrent sanctions of the exclusionary rule should be applied to such serious and deliberate government wrongdoing."

In footnote 4 page 900 the court says:

"We agree with the Seventh Circuit that completely innocent misrepresentation should not support suppression even if material. The primary justification for the exclusionary rule is to deter police misconduct. Furthermore, if the officer reasonably believes facts which facially indicate a crime has been committed, then even if mistaken, he has probable cause for believing a crime has been committed."

The court finds that the officers, particularly Sgt. Brown, did not intentionally include any untruthful or misleading statements in the information for Search Warrant. The officers proceeded to headquarters and gathered the facts and prepared the Information for Search Warrant after Van Reese had entered defendant's apartment. They had to take the Information to the judge's home for his action. The need to proceed with haste is obvious. Less diligent officers might have been tempted to proceed with the search and attempt later to justify a warrantless search. A more accurate statement would have been more than sufficient to support the issuance of a warrant. There was no reason for the officers to commit perjury.

Were the statements recklessly made and if so, were they material? A comparison of the wording of the Information with the facts as disclosed at the hearing indicates both inaccurate and misleading statements. However, I am not persuaded that they were recklessly made. The urgency of the situation and the preparation by a police officer rather than a lawyer does much to explain the discrepancies.

The Information does not state where the October 2, buy took place. Even if the actual transfer of the cash and marijuana took place at the Burger Chef, Van Reese continued to be in the company of the undercover officer until he left the car at his residence. The whole buy transaction was not concluded until they separated at that time. One reading the Information would not know Van Reese spent 30 to 35 minutes in his own apartment. Although it would have been more accurate to have included this fact in the Information, it loses significance since it was his own residence and no one entered or left during this period of time. As no other stops or contacts were made between the time he left his residence and his entry into defendant's apartment, it is understandable why the officer used the term "directly".

Although someone just reading the Information might have been mislead, the judge also had the benefit of oral sworn testimony of Sgt. Brown. The abstract of this testimony tends to show the judge understood the situation or at least that Sgt. Brown did not intentionally or recklessly make inaccurate statements in the Information. It is stated:

"I have personal knowledge that Mr. Van Reese did sell to an undercover narcotics officer one kilo of marijuana for the sum of $320. of which the serial numbers have been recorded, and did *a short time thereafter* go to 914 S. E. Pioneer."

Defendant claims the statement concerning the police officer's observation of defendant using marijuana at 914 S. E. Pioneer was misleading because it failed to reveal the incident took place about ten months earlier. The court considers this a peripheral fact which showed only that the defendant used marijuana. The time element is not significant. A person can use marijuana without selling it, which is the gist of the offense charged.

Defendant also claims it was inaccurate for the affiant to state he had personal knowledge Van Reese was carrying the marked money with which the marijuana had been purchased. At hearing Sgt. Brown conceded it was an assumption that he made rather than a matter of personal knowledge. As it is a logical assumption, the erroneous inclusion under the form referring to personal knowledge can hardly be considered reckless. In addition, a literal reading of the Information would require an interpretation that the officer knew Van Reese was carrying "recorded serial numbers" not the money itself. This is obviously an error due to haste—not recklessness.

Having found that any inaccuracies were innocently rather than intentionally or recklessly made, the court will examine the contents of the Information with the inaccuracies omitted, including the information obtained from the informant. Although there was a suggestion that there was not enough information to establish the reliability of the informant, the court is satisfied that the information did establish his reliability.

If we omit all of the underlined portions of the Information hereinabove set out, the judge was still informed that an undercover officer made two buys of marijuana from Van Reese. A short time after the second buy Van Reese went to 914 S. E. Pioneer, the home of the defendant from whom Van Reese purchased his marijuana.

The court is of the opinion that under the authorities hereinabove set out this is sufficient information on which to issue a search warrant.

It is therefore ordered that defendant's Motion to Suppress is denied.