UNITED STATES of America, Appellee,

v.

**Max ABRAMSON, Appellant.**

UNITED STATES of America, Appellee,

v.

**Frank BONFIGLIO, Appellant.**

UNITED STATES of America, Appellee,

v.

**Paul CAPPELLANO, Jr., Appellant.**

**Nos. 76–1583, 76–1588 and 76–1589.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1976.

Decided April 26, 1977.

Certiorari Denied June 27, 1977.
See 97 S.Ct. 2979.

Oscar B. Goodman, Las Vegas, Nev., on brief for appellant Max Abramson.

David L. Herzog, Omaha, Neb., on brief for appellants Bonfiglio and Cappellano.

William E. Zleit, Dept. of Justice, Kansas City, Mo., for appellee; Daniel E. Wherry, U. S. Atty., Omaha, Neb., on brief.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Max Abramson, Frank Bonfiglio, and Paul Cappellano, Jr. were convicted of conducting an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2. Their only substantial arguments on appeal relate to the admission of the fruits of a wiretap investigation conducted between November 10 and November 24, 1973, in Omaha, Nebraska.

The wiretap was authorized, after government application under 18 U.S.C. § 2518, by Senior United States District Judge Robert Van Pelt.[1] The government's application was supported by a twenty-seven page affidavit of FBI Agent Edward O'Brien, in which he averred that agents were examining a gambling business conducted principally by John Salanitro. Appellant Cappellano was named in the application as a person committing the offense whose conversations were to be intercepted, as required by 18 U.S.C. § 2518(1)(b)(iv). Appellants Abramson and Bonfiglio were not so named. The target facilities were two telephones in Omaha subscribed to by one Sol Epstein. The application contained numerous assertions tending to establish probable cause to believe that the phones would be used in an illegal gambling business, including Agent O'Brien's account of conversations with five confidential informants.

In 1970, a wiretap had been authorized on a different Omaha telephone, located at the Rocket Recreation Center. Appellant Abramson (but not Bonfiglio and Cappellano) was named as a person to be intercepted; his conversations were in fact intercepted. The fruits of this wiretap were later suppressed, in criminal proceedings, because the application was not authorized by the Attorney General or a designated Assistant Attorney General as required by 18 U.S.C. § 2516(1). *United States v. Abramson,* 501 F.2d 397 (8th Cir. 1974).[2] The suppression in the previous case was on appeal to this Court when the instant application was made to Judge Van Pelt. The investigating agents disclosed the existence of the earlier tap to Judge Van Pelt, but did not inform him that the fruits of the tap had been suppressed.

In the present proceedings, appellants moved to suppress the fruits of the 1973 tap. The District Court,[3] in a carefully considered memorandum opinion, denied the motion. The case was then submitted to the District Court on stipulated facts and

---

1. United States District Court, District of Nebraska.

2. The 1970 tap was first authorized and then suppressed by the Honorable Richard E. Robinson, Senior District Judge for the District of Nebraska.

3. The Honorable Albert J. Schatz, United States District Court for the District of Nebraska.

exhibits. The Court found appellants guilty.[4]

On appeal, appellants Bonfiglio and Cappellano challenge the use of evidence obtained by means of the 1973 tap because (1) the District Court refused disclosure of the identity of one of the confidential informants relied on in the wiretap application; (2) the government failed to inform the Court that fruits of the previous tap had been suppressed; (3) the application and order did not show the unavailability of other investigative techniques, as required by 18 U.S.C. § 2518(1)(c) and (3)(c); and (4) the 1973 tap was the product of the tainted 1970 tap and should have been suppressed.

Appellant Abramson contends (1) that reversal is required for failure to name him in the application and order; (2) that the government failed to establish that it had attempted alternative means; (3) that failure to advise the judge hearing the 1973 application of the suppression of the 1970 tap requires reversal; (4) that the evidence was insufficient to sustain his conviction; and (5) that 18 U.S.C. § 1955 is unconstitutional.

We reject all contentions made in these appeals and affirm the judgments of conviction.

### I.

In addition to information based on personal knowledge, surveillance, and other investigative activity by Agent O'Brien and other agents, O'Brien's affidavit contained a recitation of relevant information gleaned from five confidential informants. Confidential informant # 1 had told O'Brien that he had been personally acquainted with John Salanitro, Wayne Womochil,

Paul Cappellano, Sr., and Paul Cappellano, Jr. for over five years; that he had personally placed bets with Salanitro and Womochil; that through continuing association with these men he had determined that Salanitro was operating one of the largest bookmaking operations in Omaha, Nebraska, with a weekly volume in sports bets during the football season in excess of $250,000; and that Salanitro employed many "agents" and "runners" to handle the accepting of bets for him. The informant also reported that Salanitro was extremely security conscious and frequently moved his bookmaking operations within the Omaha area to avoid detection; that Salanitro changed the location where he could be reached by telephone every few months, and that for approximately two months prior to October 5, 1973, bets were placed with Salanitro at telephone number 402–345–7277; and that since approximately October 5, 1973, Salanitro's agents and a small select group of heavy bettors had contacted him personally at either telephone number 402–551–0854 or 402–551–1333 to place bets.[5]

According to O'Brien's affidavit, four other confidential informants supplied information substantially corroborating that of confidential informant # 1, as well as supplying other factual information with respect to the ongoing bookmaking operation.

At a pretrial hearing on the motion to suppress, defendants offered the testimony of Sam Biase, who had been described by confidential informant # 1 as an associate of John Salanitro. Biase categorically denied making a number of the statements about the bookkeeping operation which were attributed to him by confidential informant # 1.[6]

---

**4.** The indictment in this case originally named eighteen defendants. Thirteen pleaded guilty or nolo contendere, and five were found guilty by the court. Of those found guilty, two—John Salanitro and Paul Cappellano, Sr.—have since died. Only Abramson, Bonfiglio and Cappellano, Jr. remain before this Court.

**5.** These were the two numbers subjected to the authorized wiretap.

**6.** According to the O'Brien's affidavit, confidential informant # 1 told O'Brien that he observed Sam Biase accept money for bets to be placed with John Salanitro; that Salanitro handled "action" on the telephone from "agents" and "runners" employed by him; that Salanitro was handling $450,000 per week in sports betting; and that Paul Cappellano, Sr. was a runner for Salanitro.

Appellants Bonfiglio and Cappellano, Jr. contend that the District Court erred in denying their motion to disclose the identity of confidential informant # 1. We reject this contention.

O'Brien's affidavit states that he had known confidential informant # 1 for a period of five years during which the informant's information had proved to be reliable, and, in one instance, had resulted in an arrest and the recovery of a substantial amount of stolen property. The basis and source of the information attributed to the informant is carefully set forth and is corroborated in many respects by information supplied by other confidential informants and by the personal knowledge of O'Brien and other agents.

■ Where the existence of probable cause to make a warrantless search may hinge on the reliability or even the existence of one informant, we have required the District Court to conduct an in camera examination. *United States v. Hurse*, 453 F.2d 128 (8th Cir. 1972), *cert. denied*, 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973). Where a warrant has issued, however, we look only to the information before the judicial officer to determine whether the warrant was issued on probable cause. O'Brien's affidavit, which we have examined, clearly meets this requirement. There is no necessity that the information supplied be in all respects accurate; the test is whether the sworn information before the court is of sufficient apparent reliability to warrant a neutral magistrate in finding that there is probable cause to believe that an offense has been or is being committed.[7] *See Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States ex rel. DeRosa v. LaVallee*, 406 F.2d 807, 808 (2d Cir.), *cert. denied*, 396 U.S. 854, 90 S.Ct. 115, 24 L.Ed.2d 103 (1969). Probable cause is not defeated even if the informant lied to the agent, as long as the agent

accurately represented what was told him. *United States v. Sultan*, 463 F.2d 1066, 1070 (2d Cir. 1972); *see United States v. Garofalo*, 496 F.2d 510, 511 (8th Cir.), *cert. denied*, 419 U.S. 860, 95 S.Ct. 109, 42 L.Ed.2d 94 (1974).

■ There is a basis for disclosure of an informant's identity in the unusual case in which he was a central figure and principal witness to the crime, compelling the disclosure of his identity on principles of fundamental fairness. *See McCray v. Illinois*, 386 U.S. 300, 305–06, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Rugendorf v. United States*, 376 U.S. 528, 534, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). It does not appear that confidential informant # 1 occupied such a critical role in the prosecution; to the contrary, the informant's information was duplicated by other information and his identity was not necessary to assure a fair opportunity to the appellants to prepare their defense. The District Court did not abuse its discretion in refusing to make the informant's name known under such circumstances. *See McCray v. Illinois, supra*, 386 U.S. at 311, 87 S.Ct. 1056.

## II.

Appellants Bonfiglio and Cappellano, Jr. contend that the failure of the government to disclose to Judge Van Pelt that the 1970 wiretap had been suppressed by Judge Robinson warranted suppression because (1) such nondisclosure precluded the 1973 wiretap application from containing "a full and complete statement of facts concerning all previous applications known to the individual authorizing and making the application * * * and the action taken by the judge on each such application" as required by § 2518(1)(e); (2) the 1973 application was tainted as the fruit of the 1970 tap; and (3) the failure to disclose the suppression of the

---

7. No contention is made on this appeal that the government intentionally misrepresented facts concerning the confidential informant to the District Court. *Cf. United States v. Marihart*, 492 F.2d 897 (8th Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). *See*

*United States v. Luciow*, 518 F.2d 298 (8th Cir. 1975); *United States v. Lee*, 540 F.2d 1205, 1208 (4th Cir. 1976); *United States v. Luna*, 525 F.2d 4, 6–7 (6th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976).

1970 tap was a deliberate misrepresentation by the government warranting suppression of the evidence. *See United States v. Marihart*, 492 F.2d 897 (8th Cir. 1974).[8]

### A. Noncompliance with § 2518(1) (e)

The government argues that it had no obligation to disclose the 1970 wiretap to Judge Van Pelt because § 2518(1)(e) limits the disclosure requirement to "all previous applications * * * involving any of the same persons, facilities or places specified in the application." It contends that, because only Abramson was named in the 1970 application, and he was not named in the 1973 application, disclosure of the earlier tap was not required. The government urges that its disclosure of the prior application was made "out of an abundance of caution" because two of the persons named in the 1973 application, Salanitro and Womochil, had been intercepted during the course of the 1970 electronic surveillance. The District Court concluded that disclosure of the earlier tap was not required, relying upon *United States v. Bellosi*, 163 U.S.App.D.C. 273, 501 F.2d 833, 839 n. 13 (1974). In *Bellosi*, the District of Columbia Circuit held that while Congress did not require disclosure of *interceptions* resulting from a previous application, it did intend to require that all previous *applications* involving the same parties be disclosed whether or not arising out of an entirely different investigation.

■ While it is arguable that disclosure of the 1970 wiretap was not required in connection with the 1973 application because the two applications involved different "named parties," we think that the voluntary disclosure of the 1970 application without mention of the suppression was not "a full and complete statement of the facts" and hence constituted noncompliance

with § 2518(1)(e). The disclosure of the 1970 wiretap in paragraph 17 of O'Brien's affidavit attributed a legitimacy to that undertaking which might have tended to reinforce the 1973 application.[9] We think the government's duty of candor was clearly not exhausted here.

Agent O'Brien testified that he thought the fact of a pending appeal from the order of suppression made some difference. We think otherwise. If a subsequent judicial order rejects an application or sets aside, suppresses, or otherwise limits the use of information gained from a previously granted application, these facts must be disclosed if the application itself is disclosed. Otherwise the disclosure is neither "full" nor "complete."

Given the noncompliance with the disclosure requirements of § 2518(1)(e), we next consider whether suppression is required as a result. In *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Supreme Court recently enunciated principles to be used in determining whether violations of the wiretap statute require suppression.

It is clear, first, that "[t]he availability of the suppression remedy for these statutory, as opposed to constitutional violations, * * * turns on the provisions of Title III rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment Rights." 97 S.Ct. at 670 n. 22 (citation omitted). The relevant provisions of Title III are 18 U.S.C. §§ 2515 and 2518(10)(a), under which suppression is triggered only where:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

---

**8.** Appellant Abramson challenges the denial of the motion to suppress only on the basis of the *Marihart* misrepresentation claim of the other appellants.

**9.** Abramson was the only person named in the 1970 application. We recognize that the 1973 application antedated the Fourth Circuit's opinion in *United States v. Bernstein*, 509 F.2d 996

(4th Cir. 1975), *vacated,* —— U.S. ——, 97 S.Ct. 1167, 51 L.Ed.2d 578 (1977), and our holding in *United States v. Civella*, 533 F.2d 1395 (8th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1977), *vacated in part, United States v. Barletta,* —— U.S. ——, 97 S.Ct. 1168, 51 L.Ed.2d 578 (1977).

(iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). As in *Donovan*, only the first of these provisions is at issue here.

In *Donovan*, the Supreme Court repeated its earlier holding that suppression is required only for "a 'failure to satisfy any of those statutory requirements that directly and substantially implement the Congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" 97 S.Ct. at 671, *quoting United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). It repeated also its earlier conclusion that a statutory violation renders an interception unlawful for purposes of § 2518(10)(a)(i) only if the requirement involved plays a "substantive role" in the regulatory system, 97 S.Ct. at 671, *citing United States v. Chavez*, 416 U.S. 562, 578, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

In determining whether the particular requirements before it (the naming requirement of § 2518(1)(b)(iv) and the inventory requirement of § 2518(8)(d)) met these tests, the Supreme Court looked to see whether the statutory violations detracted from the sufficiency of the factors which the issuing judge must find to be present if a wiretap order is to issue. 97 S.Ct. at 672. Those factors are:

> that normal investigative techniques have failed or are unlikely to succeed and there is probable cause to believe that: (i) an individual is engaged in criminal activity, (ii) particular communications concerning the offense will be obtained through interception; (iii) the target facilities are being used in connection with specified criminal activity.

97 S.Ct. at 671–72.

In *Donovan*, the Supreme Court found that the particular violations present could "hardly invalidate an otherwise lawful judicial authorization" made on the basis of the presence of the enumerated factors, and hence did not require suppression. 97 S.Ct. at 672.

Viewed against the backdrop supplied by the recent teachings of *United States v. Donovan, supra*, we hold that the failure to disclose the fact of suppression of the 1970 wiretap did not detract from the sufficiency of the enumerated factors necessary to a judge's wiretap authorization and hence was not central or functional in guarding against unwarranted use of wiretapping or electronic surveillance. We therefore reject this contention.

### B. *Taint*

▇▇▇ It is urged by appellants Bonfiglio and Cappellano, Jr. that the 1973 tap was tainted by the government's knowledge of and use of the evidence illegally obtained by the 1970 tap.[10] Bonfiglio and Cappellano, Jr. clearly are without standing to raise this contention. Neither was named as a target in the 1970 wiretap application, and neither was a party to a conversation recorded or intercepted as a result thereof. Fourth Amendment protections applicable to electronic surveillance are available only to those whose rights were violated by the search itself, not to "those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969).[11]

### C. *Misrepresentation*

▇▇▇ All three appellants contend that the failure to disclose the 1970 wiretap suppression order to Judge Van Pelt was an intentional misrepresentation calling for the stern remedy of suppression or dismissal. The District Court considered and rejected this argument. At the suppression hearing Agent O'Brien testified that he had told Judge Van Pelt that the case was on appeal

---

**10.** Appellant Abramson does not preserve this point on appeal.

**11.** In view of our holding it is unnecessary to address the government's alternate contention that none of its evidence was derived from the 1970 wiretap.

because of a signature problem. He did not recall having used the word "suppression." Judge Schatz, after careful consideration of the evidence, held that failure to disclose the suppression order to Judge Van Pelt in this instance was not the kind of deliberate misrepresentation condemned in *United States v. Marihart, supra.* We agree, and likewise reject this contention.

## III.

■ Appellants Bonfiglio and Cappellano, Jr. contend that there was a fatal noncompliance with the requirements of 18 U.S.C. § 2518(1)(c) [12] and that the District Judge's finding, required by § 2518(3)(c), that "normal investigative procedures [had] been tried and [had] failed or reasonably appear[ed] to be unlikely to succeed if tried or to be too dangerous," was clearly erroneous. Particular reliance is placed upon the testimony of F.B.I. Agent Michael Growney, who testified that in April, 1973, he had it in mind to get a wiretap from the time the investigation was initiated. We agree with the District Court that this testimony was inconclusive. Growney was not in charge of the investigation and his subjective state of mind did not control the objective events which followed. The District Court properly rejected this contention.

In his affidavit, Agent O'Brien stated that the standard investigative techniques which had been utilized by him and by other agents of the Omaha office over the past seven months had not succeeded in providing evidence to sustain a prosecution. He then set forth in detail the reasons why such alternative techniques had not been productive. For example, he stated that Salanitro was "surveillance conscious" and often conducted himself, as did the others named in the affidavit, in a manner to detect and elude surveillance. (Other portions of the affidavit support this state-

ment.) He stated, based upon considerable experience, the gambling raids and searches were very rarely productive and only resulted in bookmakers and their associates changing their places and modes of operation and that records were usually destroyed in the process.

We recently stated in *United States v. Jackson,* 549 F.2d 517 at 537 (1977):

The Supreme Court has stated that the language of §§ 2518(1)(c) and 2518(3)(c) "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, [94 S.Ct. 977, 983, 39 L.Ed.2d 225] (1974). In enacting Title III, Congress did not require the exhaustion of "specific" or "all possible" investigative techniques before wiretap orders could issue. *United States v. Smith,* 519 F.2d 516, 518 (9th Cir. 1975). Congress prohibited wiretapping only when normal investigative techniques were likely to succeed and not too dangerous, *United States v. Daly,* 535 F.2d 434, 438 (8th Cir. 1976), and "[m]erely because a normal investigative technique is theoretically possible, it does not follow that it is likely." S.Rep. No. 90–1097, 90th Cong., 2d Sess. 100, *reprinted in* [1968] U.S. Code Cong. and Admin. News, 2190. Thus, §§ 2518(1)(c) and 2518(3)(c) have been deemed to be designed only to ensure that wiretapping is not "routinely employed as the initial step in criminal investigation." *United States v. Giordano,* 416 U.S. 505, 515, [94 S.Ct. 1820, 40 L.Ed.2d 341] (1974).

*Accord, United States v. Matya,* 541 F.2d 741, 745 (8th Cir. 1976).

■ We are satisfied that a sufficient showing of the exhaustion of other means was made in this case.

---

**12.** Section 2518 provides in part:

(1) * * * Each application shall include the following information:

\* \* \* \* \* \*

(c) A full and complete statement as to whether or not other investigative procedures have been tried and failed [and whether or not] they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]

## IV.

Appellant Abramson contends that the communications were unlawfully intercepted because the application failed to comply with 18 U.S.C. § 2518(1)(b)(iv), which requires that each application include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." Abramson was not identified as such a person, but his telephone conversations were intercepted and recorded in the course of the wiretap. In *United States v. Donovan, supra,* the Supreme Court held that, if law enforcement authorities have probable cause to believe that an individual is committing an offense for which the wiretap is sought and that his conversations will be intercepted over the target telephone, he must be identified in the application whether or not he is in any way associated with the target telephone. 97 S.Ct. at 668. The Court also held, however, that the naming requirement does not play " 'a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance,' " 97 S.Ct. at 673, *quoting United States v. Chavez, supra,* 416 U.S. at 578, 94 S.Ct. 1849, so that suppression is not required for its violation.[13]

■ *Donovan* is plainly controlling here; any violation of the naming requirement would not detract from the sufficiency of the factors upon which Judge Van Pelt issued the wiretap order. Suppression is not required.

**13.** The Supreme Court held that the naming requirement did not play a central role because it could not in any way detract from the sufficiency of the factors to be utilized by the District Court in ruling on the application. These factors are set forth in point II–A, *supra.*

**14.** *See* 18 U.S.C. § 2518(8)(d).

**15.** The majority opinion in *United States v. Donovan, supra,* noted that had there been a showing that government agents "knowingly failed to identify respondents * * * for the purpose of keeping relevant information from the District Court that might have prompted the court to conclude that probable cause was lacking * * * we would have a different case." 97 S.Ct. at 672 n. 23. The only showing of possible concealment in this case was the prior knowledge of Agent O'Brien that Abram-

In view of our holding, it is unnecessary to consider the contention of the government that there was no violation because it in fact had no probable cause to believe that Abramson would be among those intercepted in the 1973 wiretap. We do note that the District Court found no prejudice to Abramson, since all defendants, whether or not named in the application and order, were given all documents and information required by Title III.[14] In addition, they were given an opportunity to review all tape recordings of intercepted conversations, were provided with voluminous copies of transcripts of the conversations prepared by the government, and were given an opportunity to compare the transcripts with the recordings.[15]

## V.

■ Only appellant Abramson contends that the evidence was insufficient to support a conviction. Prior to trial, Abramson, along with the other parties to this appeal, entered into a stipulation of facts with the government in which they conceded as true all of the facts alleged in Count I of the indictment, preserving for appeal only their legal claims to suppression of the evidence. Count I clearly charges an offense under 18 U.S.C. § 1955. *See United States v. Schaefer,* 510 F.2d 1307, 1311 (8th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). This contention is frivolous.

son was one of the biggest gamblers in Omaha and that he had been the subject of an earlier wiretap. There was no showing that Agent O'Brien knew (he expressly denied) that Abramson and Salanitro were involved in the same gambling business. The District Court found that while Abramson had been seen with Salanitro on isolated occasions and his name may have been mentioned by tipsters in connection with Salanitro, the amount and quality of information was not substantial enough to establish probable cause to believe that Abramson was associated with Salanitro's gambling business in 1973 or that he would be overheard on the particular telephone to be tapped. We cannot say from this record that such findings were clearly erroneous.

## VI.

Appellant Abramson challenges the constitutionality of § 1955. He contends that by relying on local law to define illegality, the statute denies due process, in view of the lack of uniformity in state and local laws governing gambling. He also contends that the statute is defective because a conviction can be obtained even in the absence of a showing of connection with interstate commerce. We have repeatedly rejected these contentions. *See United States v. Matya*, 541 F.2d 741, 748 (8th Cir. 1976); *United States v. Meese*, 479 F.2d 41, 42–43 (8th Cir. 1973); *United States v. Wolk*, 466 F.2d 1143, 1146 n. 2 (8th Cir. 1972); *Schneider v. United States*, 459 F.2d 540 (8th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *accord, United States v. Morrison*, 531 F.2d 1089, 1093 (1st Cir. 1976); *United States v. Hawes*, 529 F.2d 472, 477–78 (5th Cir. 1976). Appellant's challenge to the constitutionality of the statute is thus without merit.

The judgments of conviction are affirmed.