**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clarence Joseph RESSLER, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Danny Franklin JOHNSON, Defendant-Appellant.**

**Nos. 75–1857, 75–1875.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1976.

Decided June 11, 1976.

---

**12.** In so doing, we do not decide whether *Younger* principles require this result.

John F. Surbeck, Jr., Daniel A. Roby, Fort Wayne, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Charles F. Leonard, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and PERRY, Senior District Judge.*

BAUER, Circuit Judge.

These two appeals from convictions under 18 U.S.C. App. § 1202(a)(1)[1] for the receipt, possession or transport in commerce of firearms by a felon present two principal issues: the legality of a search initiated by a deceptive entry into the suspects' home and the propriety of jury instructions regarding the interstate commerce nexus required for a conviction under 18 U.S.C. App. § 1202(a)(1).

### I.

In early March, 1975, Special Agent Raymond Lewis of the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, received information that Clarence Ressler and an individual known as "D.J.", residents of Fort Wayne, Indiana, were convicted felons in possession of firearms in violation of federal law. His source being of unproved reliability, Agent Lewis sought to verify the information through an undercover investigation. He obtained the assistance of Indiana State Police Officers Charles Hampshire and Louis Cinko to conduct the investigation.

At approximately 11:40 p. m. on April 3, 1975, Officers Hampshire and Cinko and a confidential informant known by the suspects knocked on the door of the petitioners' residence in Fort Wayne. A woman answered and admitted them after they told her they wanted to see "Cory." "Cory" is a nickname for Clarence Ressler. The petitioners and three other persons were inside.

After entering, Officer Hampshire told the petitioners and the others that he had heard they were interested in buying some firearms and that he had some to sell. The residents requested to see the guns. Hampshire displayed several handguns he was carrying. One of the residents offered cash for the guns, which Hampshire refused. Hampshire then suggested that he might trade them for "long weapons", i. e., rifles and shotguns. In response, petitioner Ressler left the room and returned with a .12 gauge double-barreled shotgun. Hampshire noted the name and last two serial numbers on the gun.

At one point during the conversation, while Hampshire and the residents were discussing the ease with which handguns could be concealed, petitioner Johnson removed a .9 mm., .38 caliber pistol from under his jacket. Hampshire was able to

---

* The Hon. J. Sam Perry, United States District Court for the Northern District of Illinois, is sitting by designation.

1. 18 U.S.C. App. § 1202(a)(1) states:
 "(a) Any person who—
 (1) has been convicted by a court of the United States or a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

see the notation "P–38" on its side. The officers left the residence about 12:30 a. m.

On April 5, two Fort Wayne police officers recovered a pistol at a tavern from a booth in which Johnson had been sitting. The Fort Wayne police later arrested Johnson and found him to be carrying ammunition for the gun. At trial, Officer Hampshire identified the pistol as being the one with the "P–38" notation displayed to him by Johnson at the petitioners' home.

Relying principally on the information obtained by Officer Hampshire on the night of April 3, Agent Lewis obtained a warrant to search the petitioners' home. On April 7 he executed the warrant and confiscated the shotgun Ressler tried to sell to Hampshire, a World War II Japanese rifle, and some shotgun shells.

Ressler was indicted and convicted under 18 U.S.C. App. § 1202(a)(1) for receiving, possessing and transporting in commerce the shotgun. Johnson was indicted and convicted under 18 U.S.C. App. § 1202(a)(1) for receiving, possessing and transporting in commerce the pistol and Japanese rifle. Their trials were separate and their appeals were argued separately. Since the issues on appeal are similar, we will discuss them in one opinion.

## II.

Both petitioners claim that the firearms seized in the search of the petitioners' home on April 7, pursuant to the warrant based on information obtained in the April 3 entry into the petitioners' home, and the testimony of the officers regarding the April 3 entry should not have been admitted at trial since the April 3 entry was an illegal search.

The main thrust of petitioners' argument is that the officers violated the petitioners' Fourth Amendment rights by obtaining entry into their home through the ruse of asking for petitioner Ressler by his nickname.

Recognizing that the Supreme Court in *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), sanctioned police investigations conducted by undercover agents who enter the homes of suspects to purchase contraband, the petitioners attempt to distinguish that case on the *ground* that the officers in the case at hand were not invited into the home of the suspects for the express purpose of engaging in an illegal transaction as was the officer in *Lewis*. They argue that the invitation to engage in an illegal transaction was the foundation for the *Lewis* decision and that the absence of such an invitation here renders the entry illegal, despite the later engagement in illegal transactions.

We do not read *Lewis* so narrowly. In our view, the rationale of the decision is that an entry by an undercover agent is not illegal if he entered for the "very purposes contemplated by the occupant". Id., 385 U.S. at 211, 87 S.Ct. at 427. See also *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. Phillips*, 497 F.2d 1131, 1135 (9th Cir. 1974); McCormick, *Handbook of the Law of Evidence* (2d ed.) at 405.

▮ When an agent assumes a particular pose in order to gain entry into certain premises and then obtains information by engaging in activity not generally expected of one assuming that pose, that information is illegally obtained. Thus, an agent may not enter a premises as an acquaintance of the owner and conduct an unauthorized general search of the premises. *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). Nor may an agent compel his entry into a suspect's premises to conduct a search by claiming to be a police officer investigating a non-existent burglary, *United States v. Phillips*, 497 F.2d 1131 (9th Cir. 1974); a Western Union agent, *Gatewood v. United States*, 93 U.S.App.D.C. 226, 209 F.2d 789 (1953); or a member of a private lodge, *Fraternal Order of Eagles v. United States*, 57 F.2d 93 (3d Cir. 1932).

In these cases the agents were not present for the "very purposes contemplated by the occupant". The suspect in such situations did not voluntarily consent to the exposure of the information, but exposed it in response to an affirmative misrepresen-

tation. Accordingly, the information obtained was not "knowingly exposed to the public", *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), nor did the suspect knowingly assume the risk that the exposed information might be reported to government authorities. See *United States v. Miller*, —— U.S. ——, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

Under this reading of *Lewis*, the initial entry by the agents in the case at hand did not violate the defendants' Fourth Amendment rights since the agents did not engage in any conduct not contemplated by the residents when they consented to their entry. They merely entered the house and stood in the front room in the presence of the residents as would anyone admitted.

■ While the agents' reference to "Cory", Ressler's nickname, can be perceived as a misrepresentation by the agents that they were acquaintances of Ressler, entry gained through such a representation was held to be permissible under the Fourth Amendment in the only federal case on point which we have found, *Whiting v. United States*, 321 F.2d 72 (1st Cir. 1963).

■ We agree with the *Whiting* decision since a suspect cannot be considered to have unknowingly exposed information to an agent in such a situation. A person is expected to recognize his acquaintances and any information revealed to one who claims to be an acquaintance, but who in fact is not one, must be viewed as exposed at the suspect's risk. See *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

Furthermore, the type of misrepresentation here involves less deception on the part of the agent than the misrepresentations sanctioned in *Lewis* and in *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), where the agents obtained information by appearing to be participants in illegal transactions.

■ Once the agents entered the house they brought up the subject of selling fire-arms. At that time the defendants became aware of the agents' purported purpose in being present. They then could have told the agents that they were not interested in dealing in firearms and asked them to leave, or they could have responded to the agents by engaging in the illegal activity. The defendants took the latter course by asking to see the agents' firearms and displaying their own weapons. Through these actions they acquiesced in the presence of the agents for the purpose of dealing in firearms and converted their home into a "commercial center" not protected by the Fourth Amendment. *Lewis v. United States, supra*, 385 U.S. at 211, 87 S.Ct. 424. As in *Lewis*, the agents did not violate the suspects' Fourth Amendment rights since they did not "see, hear, or take anything that was not contemplated, and in fact intended, by petitioner[s] as a necessary part of [their] illegal business." *Lewis v. United States*, Id. at 210, 87 S.Ct. at 427.

Petitioners' second argument for distinguishing *Lewis* is that the agents in the case at hand, unlike the agent in *Lewis*, did not have the requisite probable cause to support the issuance of a search warrant. 385 U.S. at 208, n. 4, 87 S.Ct. 424. This argument is of no merit since the presence or absence of probable cause was immaterial to the *Lewis* Court's decision. The Court there held that the suspect's Fourth Amendment rights were not violated by the agent. 385 U.S. at 212, 87 S.Ct. 424. The existence of probable cause is only relevant when Fourth Amendment rights have been violated.

In summary, the agents, while not revealing their identity and true purpose in entering the defendants' residence and dealing in firearms with them, did not engage in any activity which exceeded the scope of the activities expected of them by the defendants. Thus the fruits of the entry, the information they obtained at the time regarding illegal activities of the defendants and the guns seized in the April 7 search of the premises, were not obtained in violation of the defendants' Fourth Amendment

rights and were properly admitted at trial by the district court.

### III.

Petitioner Johnson argues that the Japanese rifle seized from his bedroom in the April 7 search should be suppressed because the warrant authorizing the search was not issued on the basis of probable cause since the affidavit upon which it was issued did not indicate that Johnson was engaged in criminal activity.

It is unnecessary for us to decide whether the affidavit contained sufficient information regarding Johnson's criminal activity since the rifle was properly seized under the plain view exception to the search warrant requirement in the Fourth Amendment.

■ The requirements for the plain view exception were met. First, the officers were legally on the premises. The affidavit upon which the search warrant was issued indicates that Clarence Ressler, a resident of the same premises, was engaged in criminal activity. These statements regarding Ressler are sufficient authority for the issuance of the warrant to search the premises. See *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ Second, the Japanese rifle which belonged to Johnson was properly seized in the search. The gun was found in plain view lying on a bed on the second floor of the residence. Ressler was found asleep in another bedroom on the same floor. The officers were acting within the scope of the search warrant when they seized the rifle found so close to the suspect.

The fact that the rifle had been in the possession of Johnson rather than Ressler was not established until later. This fact is not a sufficient reason to suppress the use of the rifle as evidence even if there was no probable cause to search for weapons in Johnson's possession. The rifle was in plain view of the officers who were legally on the premises and who had probable cause to believe it was properly subject to seizure.

*Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### IV.

The second major issue is the propriety of the jury instructions given regarding the nexus with interstate commerce required for a conviction under 18 U.S.C. App. § 1202(a)(1).

In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court held that some nexus with interstate commerce must be shown by the government to support a conviction under 18 U.S.C. App. § 1202(a)(1). In dicta in the same opinion, Justice Marshall set forth the quantum of evidence of such a nexus which must be proved:

"The Government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. Significantly broader in reach, however, is the offense of 'receiv[ing] . . . in commerce or affecting commerce,' for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350, 92 S.Ct. at 524.

This Circuit in *United States v. Walker*, 489 F.2d 1353 (7th Cir. 1973), followed the *Bass* dicta with regard to the receiving offense when it held that the government need only show that the weapon received had previously traveled in interstate commerce. *Accord, United States v. Mullins*, 476 F.2d 664 (4th Cir. 1973), *cert. denied* 414 U.S. 839, 94 S.Ct. 91, 38 L.Ed.2d 75 (1973); *United States v. Mancino*, 474 F.2d 1240 (8th Cir. 1973), *cert. denied* 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973); *United States v. Giannoni*, 472 F.2d 136 (9th Cir. 1973), *cert. denied* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).

Our Circuit has not ruled on the requisite nexus for a possession offense,[2] but other Circuits which have confronted the issue have followed the *Bass* dicta and required a greater nexus to be proved than mere previous travel in interstate commerce. *United States v. Bell*, 524 F.2d 202 (2d Cir. 1975); *United States v. Kelly*, 519 F.2d 251, 252 (8th Cir. 1975); *United States v. Cassity*, 509 F.2d 682 (9th Cir. 1974); *United States v. Pleasant*, 489 F.2d 1028 (8th Cir. 1974), *cert. denied* 416 U.S. 989, 94 S.Ct. 2398, 40 L.Ed.2d 768 (1974).

Each petitioner challenges the instructions given to the jury in his case regarding the requisite commerce nexus for a possession offense. Neither challenges the instruction regarding the nexus for a receipt offense.

No. 75–1857

Petitioner Ressler argues that the jury instruction in his case regarding the required nexus for a possession conviction is erroneous since it imposes a lesser burden of proof on the government than an instruction approved by the Eighth Circuit in

**2.** In dicta in *United States v. Walker, supra*, at 1357, then Judge Stevens acknowledged that the *Bass* dicta requires a greater nexus to be shown for a possession offense.

**3.** The instruction given reads:

"A firearm is possessed 'in commerce or affecting commerce' within the meaning of the crime charged if the possession had a demonstrated connection or link with interstate commerce or, at the time of possession, the firearm was moving in commerce."

The instruction approved in *Marihart*, tendered by Ressler, and rejected by the district court, reads:

"In determining whether defendant's possession of a firearm was in or affecting commerce, you are to consider only what effect, if any, the defendant's possession of the firearms at the time and place as alleged in the indictment had on interstate commerce, or if it had a demonstrated connection or link with interstate commerce.

If you do not find beyond a reasonable doubt that the possession of firearms by the defendant at the time and place as alleged in the indictment affected interstate commerce or that said possession had a demonstrated connection or link with interstate commerce, then the plaintiff has failed to meet its burden of proof on this issue."

*United States v. Marihart*, 492 F.2d 897, 902 (8th Cir. 1974).[3]

■ We need not decide whether the instruction on commerce with respect to the possession offense given here is proper since the unchallenged instruction on commerce with respect to the receipt offense is proper[4] and sufficient evidence of the receipt of the shotgun by the defendant and the requisite commerce nexus was presented at trial.[5] Any error with respect to the instruction regarding the more stringent commerce nexus for possession is harmless if the instruction regarding the less stringent commerce nexus for receipt is proper, and sufficient evidence of both the defendant's receipt of the weapon and the requisite commerce nexus has been presented at trial. As the Supreme Court stated in *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1972):

"[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."

**4.** The instruction reads:

"A firearm is received 'in commerce or affecting commerce' within the meaning of the crime charged if the firearm received has previously traveled in 'commerce' as that term has been defined in these instructions. However, if the Government proves beyond a reasonable doubt that the defendant knowingly received a firearm in commerce or affecting commerce, it is not necessary to prove that the defendant knew the firearm he received, if any, was in commerce and affecting commerce prior to the time he received it. In that regard, it is only necessary that the Government prove beyond a reasonable doubt that the firearm was in commerce and affecting commerce as those terms are defined in these instructions."

**5.** Contrary to Ressler's contention in his brief, sufficient evidence of receipt of the shotgun was presented at trial by the testimony of Ressler himself, who admitted that he had received the firearm from Brenda Miller (Tr. 139), and the testimony of Brenda Miller, who stated that she had given the gun to Ressler (Tr. 128–129).

The shotgun's prior travel in interstate commerce was established by unrebutted expert testimony that the gun had been manufactured in Connecticut and sold to a hardware company in Indiana.

No. 75-1875

Petitioner Johnson's challenge to the instruction in his case regarding the commerce nexus for a possession offense is more substantial than Ressler's. The suspect instruction reads:

"A firearm is received or possessed 'in commerce or affecting commerce' within the meaning of the crime charged if the firearm has previously traveled in 'commerce' as that term has been defined in these instructions."

On the basis of the previously mentioned dicta in *Bass* and the cases following that dicta, this instruction is erroneous with respect to the required commerce nexus for a possession conviction since it only requires proof that the firearm previously traveled in interstate commerce, the nexus required for a receipt conviction.

 This error is harmless with regard to Johnson's conviction in Count I for the receipt or possession of the Japanese rifle since there is sufficient evidence in the record to support a conviction on the "receipt" ground.[6] As we held in Ressler's case, adequate evidence of receipt of the weapon in interstate commerce overcomes any error in the possession instruction since a receipt conviction involves the proof of a less stringent commerce nexus.[7]

The error in the possession instruction compels us to reverse Johnson's conviction under Count II since the verdict charging him with the receipt or possession of the .38 caliber pistol cannot be upheld on the "receipt" ground. The record reveals no evidence that the defendant received the pistol other than that which can be inferred from the evidence of his possession of it.

A conviction for receipt of a firearm based on evidence of possession of the firearm, without more, is insufficient at law for a conviction under 18 U.S.C. App. § 1202(a)(1). Otherwise (1) the distinction between "receipt" and "possession" established by the Supreme Court in *Bass* would be meaningless, (2) there would be no indication that the offense occurred within the jurisdiction of the district court, see *United States v. Bell*, 524 F.2d 202, 205 (2d Cir. 1975); *United States v. Kelly*, 519 F.2d 251, 254 (8th 1975); and (3) there would be no way to determine whether the prosecution is barred by the statute of limitations.

The conviction of Johnson under this count should be vacated rather than remanded for a new trial since our review of the record indicates that there was not sufficient evidence presented at trial of the nexus between Johnson's possession of the pistol and interstate commerce to sustain a conviction under the alternative possession ground.

V.

The conviction of appellant Ressler is affirmed. The conviction of appellant Johnson under Count I is affirmed, and his conviction under Count II is reversed and vacated.

No. 75-1857 AFFIRMED.

No. 75-1875 AFFIRMED IN PART, REVERSED IN PART.

---

**6.** Johnson's receipt of the firearm was established through the testimony of Brenda Miller and Johnson himself. Expert testimony established that the rifle was manufactured in Japan and thus must have traveled in interstate commerce to reach Indiana.

**7.** Johnson's alternative argument that his conviction should be reversed because the government has not proved that the travel in interstate commerce occurred after the effective date of 18 U.S.C. App. § 1202(a)(1) was rejected by this Court in *United States v. Three Winchester Carbines*, 504 F.2d 1288, 1291 n. 7 (7th Cir. 1974).