**UNITED STATES of America**

v.

**Evelyn RIVERA and Angel Rodriguez, Defendants.**

**No. 90 Cr. 0768 (KTD).**

United States District Court,
S.D. New York.

April 3, 1991.

**50**

riguez were subsequently indicted and charged with possessing with intent to distribute, and conspiring to do the same, a Schedule II controlled substance, namely, cocaine base, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), 845a(a) and 18 U.S.C. § 2 (1988). In addition, Rivera and Rodriguez were charged with using and carrying firearms, namely, a .44 magnum revolver and a .25 caliber pistol, both of which were loaded at the time of the arrest in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846 (1988). Both defendants had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

In a joint motion, counsel for Rivera and Rodriguez move pursuant to Fed.R.Crim.P. 12 and 14, to suppress statements and physical evidence and for an order directing that the trials of the two defendants be severed and tried separately. A hearing in this matter was conducted before me on March 8 and March 11, 1991.[1] The following constitutes my findings of fact and conclusions of law.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Geoffrey S. Berman, Asst. U.S. Atty., of counsel), for U.S.

Leonard F. Joy, The Legal Aid Soc., Federal Defender Services Unit, New York City (Inga L. Parsons, of counsel), for defendant Angel Rodriguez.

Fern H. Schwaber, New York City, for defendant Evelyn Rivera.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

On November 3, 1990, defendants Evelyn Rivera and Angel Rodriguez were arrested by officers of the New York City Police Department in an apartment located at 1920 Anthony Avenue, Bronx New York, and transferred to the custody of Special Agents with the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Rivera and Rod-

### STATEMENT OF FACTS

On November 3, 1990, two undercover plainclothes officers with the New York City Police Department went to 1920 Anthony Avenue, apartment 8, in the Bronx, for the purpose of posing as purchasers of drugs. Hearing Transcript ("Tr.") 7, 8. One of the undercover officers knocked on the door of the apartment, which Rivera opened; and asked whether Rivera had some drugs for sale. Tr. 7. Rivera stated that she did not recognize the undercover. She then asked who sent the undercover. Finding his response unsatisfactory, she told him that she did not sell drugs. Rivera then shut the door, not allowing the undercover entry into the apartment. Tr. 9.

The two undercover officers left the apartment building and radioed other New York City Police officers on backup duty, also in plainclothes. Tr. 9. The backup team of officers were told that the first

---

1. The delay in the hearing of this motion was occasioned solely by defense counsel.

undercover, when standing at the doorway to the apartment, had seen what appeared to be several yellow-capped crack vials on a wall unit. Tr. 9. Officer Maria Roman was part of the backup team. She went to the apartment to confirm what the first team of undercover officers had told her and to make the arrest. Tr. 8, 14.

While the backup team waited in the hallway outside the apartment, Roman knocked on the door and posed as someone from the neighborhood. Tr. 10. Roman testified that she started a conversation with Rivera, requesting assistance in finding a neighbor in the building, and gained entry into the apartment while speaking with Rivera. Tr. 11. The two walked about five feet into the apartment when Roman spotted the yellow capped vials on the wall unit; she then placed Rivera under arrest. Tr. 13–14.

Within thirty seconds of the arrest, the backup team of officers entered the apartment. Tr. 36. Roman and the officers entered the living room where Angel and Hector Rodriguez [2] were arrested as well. On a table in the living room, Roman saw two guns and a tinfoil package, which were seized. The crack vials were also seized at that time. Tr. 14–15.

Subsequently, Roman left the apartment in order to obtain a search warrant at the Bronx Criminal Court. Tr. 16. After the search warrant was obtained, Roman returned to the apartment in order to execute the warrant; she found no more contraband. Tr. 16. Roman then contacted Special Agent Richard Buggy at ATF and gave him a report of the operation. Tr. 17.

Rivera and Rodriguez were transferred to ATF custody. Special Agents with the ATF advised them of their constitutional rights, and the defendants executed forms formally waiving their rights. Rivera then told the ATF Special Agents that she was aware there were drugs in the apartment. Rodriguez stated, in substance, that "we" bought the .44 caliber magnum revolver from an unknown black man for $200 ap-

proximately one month ago, and that "we" found the .25 caliber pistol after a shooting on Walton Avenue approximately one week ago. Rodriguez also stated, in substance, that he sells drugs.

## DISCUSSION

### I. Severance

■ Defendant Rivera argues that, because of Rodriguez' post-arrest admission concerning the firearms recovered in the search, she must be tried separately. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (severance warranted where co-defendant's confession inculpates defendant and sixth amendment right to confrontation and cross-examination are impaired). In the alternative, Rivera argues that Rodriguez' statement, that "we" bought the .44 magnum revolver, should be redacted so as not to connect Rivera to Rodriguez' admission. It is well settled that where a defendant makes a statement incriminating both himself and his co-defendant, admission of a redacted version of the statement which excludes the name of the co-defendant is proper and does not violate the co-defendant's constitutional rights. *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). There is no reason to believe that each of the defendants in the case at bar would not be afforded a fair trial if both are tried together. Moreover, the "we," in the statement that "we" bought the .44 magnum revolver, in no way either directly or indirectly inculpates Rivera. Thus, there is no need for a severance of trials or to redact Rodriguez' statements here.

### II. Suppression of Physical Evidence

■ Rivera and Rodriguez contend that they were arrested and evidence was seized in violation of their fourth amendment rights. This assertion is premised on the lack of either a search warrant or exigency

---

**2.** Although Hector Rodriguez was arrested with Rivera and Angel Rodriguez, Hector was never indicted.

attendant to the circumstances under which they were arrested. Moreover, they contend that Rivera did not voluntarily or by consent invite Roman into the apartment prior to the arrest, thus Roman was unlawfully on the premises in the first place. Although no warrant preceded the arrests and seizures, the government asserts that the arresting officer was lawfully inside the apartment with Rivera's consent and that all the items seized were out in plain view.

The fourth amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It is well settled that, absent exigent circumstances, a warrantless entry into someone's home for the express purpose of searching for contraband is unconstitutional and that a search is presumptively unreasonable if conducted without a warrant. *See Payton v. New York*, 445 U.S. 573, 586, n. 24, 100 S.Ct. 1371, 1380, n. 24, 63 L.Ed.2d 639 (1980) ("a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'") (citation omitted); *United States v. Martinez–Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976) (most stringent fourth amendment protection is afforded the sanctity of a private dwelling); *Coolidge v. New Hampshire*, 403 U.S. 443, 477–81, 91 S.Ct. 2022, 2044–46, 29 L.Ed.2d 564 (1971) (absent exigent circumstances, seizures made from within a dwelling are *per se* illegal.)

"Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When the right of privacy must yield to the necessity to search is to be decided by a magistrate or judicial officer rather than a police-

man or government enforcement agent. In the instant case, an undercover officer first knocked on Rivera's door and was refused entry after asking whether he could purchase drugs. When the door to the apartment was opened, the undercover officer noticed what appeared to him to be crack vials atop a shelf of a wall unit, which was in plain view from the door. Certainly that was sufficient information to present to a magistrate for the issuance of a warrant.[3]

However, the officers assigned to this investigation chose instead to send a back-up officer to gain entry to the apartment by subterfuge in order to arrest the apartment's inhabitants, conduct a warrantless search, and seize what appeared to be illicit drugs and paraphernalia. Apparently, Rivera's apartment was a known drug location, the investigation commenced because of complaints in the neighborhood, and ongoing drug activity had no immediate end point. Considering that this was an ongoing business, conducted over a period of time, there was no articulable exigency requiring an immediate arrest. There was no threat that the contraband would be destroyed or that the defendants would flee the apartment in the immediate future.

Physical entry of the home is the chief evil against which the wording of the fourth amendment is directed.

> To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.

*Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980) (quoting *United States v. Reed*, 572 F.2d 412, 423 (2d Cir.1978). In the instant case, the arrest and search were thus *per se* unlawful unless the officers were other-

---

**3.** *Compare United States v. Wright,* 641 F.2d 602 (8th Cir.1981) (investigating officers did not conduct unconstitutional search by making plainview observations of defendant's motel room upon defendant's opening and holding open door in response to officer's ruse claiming car trouble where warrant was subsequently obtained based on seeing contraband from the threshold of the room).

wise lawfully in the apartment at the time of the arrest.

Therefore, the officers had to lawfully place themselves inside the threshold of the apartment, in plain view of the vials. Had one of the defendants admitted Roman into the apartment, then the arrest and seizure of contraband in plain view would have been lawful. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.)

Whether use of trick to gain entry prior to the issuance of a warrant vitiates Rivera's purported consent after a law enforcement official was once turned away from the apartment is a question which remains open in this circuit. *Compare United States v. Vargas*, 621 F.2d 54, 56 (2d Cir.) (use of ruse to gain admission to an apartment *after the issuance of a warrant* is fully justified), *cert. denied*, 449 U.S. 854, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980). Under certain circumstances, the use of stratagem or deception to obtain evidence is permissible even in the absence of a warrant. For example, an undercover agent posing as a drug purchaser may enter a person's home to make an illegal drug purchase. *Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 425–26, 17 L.Ed.2d 312 (1966). This is allowable because "the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, [therefore] that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Id.* at 211, 87 S.Ct. at 427. In this case, however, Rivera declined to accept the first undercover officer into her home for the purpose of transacting an illicit drug sale.

Furthermore, fourth amendment "restrictions do not vanish simply because the government seeks to obtain incriminating evidence through deception rather than through a routine search." *United States v. Baldwin*, 621 F.2d 251 (6th Cir.1980) (Justice Brennan would have granted *certiorari*) 450 U.S. at 1046, 101 S.Ct. at 1768, *cert. denied*, 450 U.S. 1045, 1046, 101 S.Ct. 1767, 1768, 68 L.Ed.2d 244 (1981). Dissenting from the denial of *certiorari*, Justice Marshall stated that a surreptitious seizure of contraband undertaken as a result of admission into a dwelling on the pretext of paying a social visit is unconstitutional. *Id.* at 1046–47, 101 S.Ct. at 1768–69 (citing *Gouled v. United States*, 255 U.S. 298, 305, 306, 41 S.Ct. 261, 263, 264, 65 L.Ed. 647 (1921)). For example:

> When an agent assumes a particular pose in order to gain entry into certain premises and then obtains information by engaging in activity not generally expected of one assuming that pose, that information is illegally obtained. Thus, an agent may not enter a premises as an acquaintance of the owner and conduct an unauthorized general search of the premises.

*Cf. United States v. Ressler*, 536 F.2d 208, 211 (7th Cir.1976) (citing *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

The defendants contend that Roman, upon entering Rivera's apartment, lacked probable cause to arrest absent a warrant. I agree. Here, Officer Roman entered Rivera's apartment under the guise of looking for a neighbor. Although in this case the vials and guns were seized openly and not surreptitiously, the *Gouled* proposition is on point because the entry was pretextual, under the guise of searching for a neighbor, wholly different than posing as someone looking to purchase drugs or guns.[4] The search might have been lawful had the first undercover officer looking to purchase drugs not been turned away by Rivera in the first instance or if Roman's entry was used solely for the purpose of obtaining a

---

4. Indeed, I am not entirely certain that Rivera actually consented to Roman's entry. The record clearly shows that Roman claimed to be looking for a neighbor and as she was speaking to Rivera, walked inside the apartment. There is no indication that Roman was actually ever invited into the apartment, even though Rivera may have been solicitous of or sympathetic to Roman's purported entreaty pursuant to the ruse.

search warrant prior to the seizures. *Cf. Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) (defendant relinquished his expectation of privacy in the home by inviting the agent in *for the purpose of conducting an illegal drug transaction* ). Rivera obviously undertook to protect the sanctity of her dwelling upon turning away the undercover. Had she opened up the apartment to the first undercover for the sale of drugs, she might have waived her rights under the fourth amendment because she would have willingly opened her premises for the express purpose of conducting illegal activities. *See Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) (invitation to enter dwelling in order to engage in an illegal transaction does not vitiate consent because inviting an undercover agent to purchase contraband constitutes an entry contemplated by the occupant); *see also United States v. Phillips*, 497 F.2d 1131 (9th Cir.1974) (agent may not compel entry into suspect's premises to conduct search by claiming to be a police officer investigating non-existent burglary); *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (unlawful entry where agent enters and searches premises under the guise of being an acquaintance of the owner) (overruled by *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) on sufficiency and narrowness of search warrant grounds); *Compare* 47 ALR4th 425 (where agent is invited into home and incriminating information or evidence is *voluntarily divulged*, occupant has no privacy interest and occupant's reliance that visitor will not reveal the occupants wrongdoing is misplaced). If Rivera opened her premises to Roman at all, it was not for the conduct of illegal activity, but to help Roman find her neighbor. No information was voluntarily divulged by Rivera at the time.[5] Neither did Rivera

open up her home that afternoon for the conduct of illegal business.

Moreover, after the first undercover, who was turned away by Rivera, stated that he viewed the crack vials from the doorway, there was sufficient information for the police and the undercover to swear out a warrant before a magistrate or judicial officer. *See e.g., United States v. Ressler*, 536 F.2d 208 (7th Cir.1976) (search held to be lawful where police officers and confidential informant, who were admitted into defendants home for the express purpose of transacting business in illegal firearms, provided the basis for a valid search warrant not executed until well after the initial transaction.) Indeed, it was only a matter of three hours after the initial entry that the officers obtained a warrant, returned to Rivera's apartment, and searched for more contraband pursuant to the warrant. Surely, the officers had enough information and enough time to have obtained a warrant prior to sending officer Roman to Rivera's apartment.

While it is true that police officers are forced to make quick decisions, undertaking difficult and often life-threatening tasks, that does not warrant sanctioning an unjustified search. If some exigency preceded the arrest and search, there would be no question that the officers return to the apartment would have been amply justified. *Compare United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990) (officers must be confronted with "urgent need to render aid or take action" in order to justify warrantless entry), *cert. denied*, —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed2d 1177 (1991). Securing contraband and assuring that it is not secreted or destroyed would have provided sufficient reason to attempt to reenter the apartment without a warrant. *See id.* at 772 ("the determination of exigent circumstances is an objec-

---

**5.** *See United States v. Vargas*, 621 F.2d 54 (2d Cir.1980) (use of ruse to gain admission to apartment justified after issuance of warrant); *United States v. Prescott*, 581 F.2d 1343 (9th Cir.1978) (citing *Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925)) (belief, however well founded, that contraband exists within a dwelling house furnishes no jus-

tification for a search of that place without a warrant); *Cf. United States v. Ressler*, 536 F.2d 208, 211 (7th Cir.1976) ("[w]hen agent assumes particular pose in order to gain entry into certain premises and then obtains information by engaging in activity not generally expected of one assuming that pose, such information is illegally obtained").

tive one based on the totality of the circumstances confronting law enforcement agents") (citations omitted). In this case, the government never raised the issue of exigency. Indeed, no exigency can be gleaned from these facts.

The facts at bar show that the officers had enough time to obtain a search warrant prior to the arrest, and since there were no exigent circumstances excusing it, the officers were compelled to obtain a warrant under the circumstances. Accordingly, the seizures of physical evidence made pursuant to the warrantless arrests in this case were made in violation of the defendants' fourth amendment rights.

### III. *Suppression of Statements*

■ Pursuant to *Payton v. New York,* the defendants seek to suppress not only the physical evidence but post-arrest admissions made to ATF agents at ATF Headquarters. Arguing that they were improperly arrested in their apartment without a warrant, prior to being brought to ATF Headquarters, the defendants claim that statements made were thus tainted products of an illegal search and seizure. I disagree.

The Supreme Court has squarely rejected the defendants' contention that such statements be considered products of an illegal search. *New York v. Harris,* —— U.S. ——, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990).[6] With respect to incriminating statements made in this case, *Harris* holds that where there is probable cause to arrest, "the exclusionary rule does not bar the [government's] use of a statement made by a defendant outside of his home, even though the statement is taken after an arrest made in the home is in violation of *Payton.*" —— U.S. at ——, 110 S.Ct. at 1641. Moreover, "the warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting [a defendant] in his home, rather than elsewhere". *New York v. Harris,* —— U.S. at ——, 110 S.Ct. at 1644. Therefore, statements made by Rodriguez at ATF Headquarters cannot be

deemed fruits of the poisonous search of Rivera's apartment.

For the foregoing reasons, the defendants' motion to suppress is granted in part. The crack vials, tinfoil containing cocaine base, and guns will not be allowed into evidence at the trial during the government's direct case. The motion to suppress the statements of defendants made at ATF Headquarters is denied. The motion to sever the case and try each defendant separately is also denied.

SO ORDERED.

---

6. The subsequent history of *New York v. Harris* is totally inapposite to this case.