**UNITED STATES of America, Plaintiff,**

v.

**Seng XIONG, Steve Moua, Amanda Chou and Edward Clark, Defendants.**

**No. 99–CR–42.**

United States District Court, E.D. Wisconsin.

July 15, 1999.

Steven Biscupic, U.S. Dept. of Justice, Office of U.S. Atty., Milwaukee, WI, for U.S.

Rodney Cubbie, Cubbie & Pepper, Milwaukee, WI, for Xiong.

Marvin T. Gross, Gross Law Office, Wauwatosa, WI, for Moua.

Thomas J. Erickson, Erickson Law Office, Milwaukee, WI, Brendan J. Rowen, Steinhafel Smith & Rowen, Brookfield, WI, for Chou.

Robert Keller, Keller Law Office, Racine, WI, for Clark.

### DECISION AND ORDER

ADELMAN, District Judge.

On June 18, 1999, Magistrate Judge Aaron E. Goodstein ordered that defen-

dant Edward Clark's motion to sever be denied and recommended that Clark's motion to suppress also be denied. Clark objects to the recommendation regarding his motion to suppress. Pursuant to 28 U.S.C. § 636(b)(1), I review his objections and the government's responses under a de novo standard.

As part of the Recommendation, the magistrate judge submitted proposed findings of fact based on an evidentiary hearing held on April 8, 1999, on the motion to suppress. Clark does not object to specific factual findings, but takes issue with the legal conclusions drawn from those findings. Accordingly, I adopt the factual portion of the Recommendation in full. For reasons discussed below, however, I decline to adopt the recommended ruling and will grant Clark's motion to suppress.

## I. FACTS

In January 1999, A Lor Hang lost approximately $100,000 in a rigged blackjack game in Appleton, Wisconsin. In the Hmong community, it had been a well-known fact that Hang received a lot of money in an insurance settlement after her husband's death. After the blackjack loss, Hang became suspicious and reported the incident to the Appleton Police Department. Appleton police, assisted by the FBI, investigated the allegations.

Hang alleged that "Bee Lee" (a.k.a. Seng Xiong), had lured her to the blackjack game over the telephone. On February 24, 1999, police obtained an arrest warrant for Lee from Magistrate Judge James R. Sickel, based on a charge of conspiracy to commit wire fraud. Special Agent Patrick Lynch swore out an affidavit in support of the arrest warrant and criminal complaint, in which he describes the blackjack scheme as follows:

Lee contacted Hang by telephone and arranged to meet her in Appleton. Lee, who told Hang he was from Chicago, traveled to Appleton and checked into the Exel Inn on January 8, 1999. Officers later confirmed that Lee was in fact from Sacramento, California.

On January 13, Lee and Hang went to the Marriott Residence Inn in nearby Grand Chute to play blackjack. Before the game began, Lee told Hang she was guaranteed to win because the dealer would flash her hand signals. The blackjack game consisted of two other persons—a Chinese man and a woman who appeared to be Native-American. The dealer, "Shawn" (a.k.a. Steve Moua), was also present. As the night progressed, the stakes of the game increased. Eventually, the dealer told Hang to produce $100,000 in cash to match the stakes. The blackjack game was suspended for several days to give Hang time to obtain the money.

On January 15, Hang returned to the Residence Inn with $100,000 cash in hand to resume playing. Hang won the first hand. At that point, Shawn stopped providing hand signals. The stakes remained high, and Hang ultimately lost close to $100,000. Afterwards, Lee told Hang that he was going to Las Vegas but that he planned to visit Appleton again in February for more gambling.

The Appleton police and the FBI decided to enlist Hang to set a sting for Lee when he returned to Wisconsin. Also assisting were the Grand Chute police. The investigators monitored telephone calls in which Lee told Hang he was on his way from Chicago for another blackjack game. Lee arrived in the Appleton area on February 27 at 2 a.m. and checked into the Microtel. Lee telephoned Hang and told her that he was in Room 316. When police called the Microtel, the motel clerk said that Room 316 was registered to an Ed Clark from Sacramento, California. The clerk also told officers that Rooms 324 and 328 were also registered to Clark.

Hang telephoned Lee in Room 316, confirming that he was there. Police went to Room 316 to arrest Lee. Although Lee was gone, Shawn, the blackjack dealer with a penchant for hand signals, was present. The officers seized "flash roll money" (rolled with large bills on top and small

bills in the middle), fake identification cards and gaming equipment from the room.

Hang then telephoned Room 324, and Lee answered. Police went to the room and arrested Lee. Also in Room 324 was Amanda Chou, the woman from the first blackjack game, mistakenly identified as Native–American. The officers also discovered more gaming material in the second room.

According to Special Agent Lynch, the officers then approached Room 328 because that room, like the other two, was registered to Clark. At that point, the officers knew that at least one other person was involved in the impending blackjack scheme in addition to Lee, Shawn and Chou, because Lee mentioned that he was bringing an opponent for Hang. During the monitored phone conversations, Lee told Hang that her new opponent would be either a Chinese male or a "millionaire" from California who would arrive by helicopter.

Clark testified that at about 3 a.m. on February 27 he was in Room 328 with his girlfriend, Brenda Sears, when they heard a knock on the door. Clark asked who it was, and the response came that it was the motel manager. In fact, it was the police. According to Lynch, the officers thought the person in Room 328 must be Hang's opponent for the rigged game. Clark turned the knob to open the door for the purported motel manager. Before the door was completely opened, the officers entered the room with their guns drawn and told Clark to get down. Clark remained on the floor for about thirty seconds, until he was allowed to stand and get dressed. The officers searched the room, seized $4000 and placed Clark and Sears under arrest.[1]

Clark was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after which he gave statements to police. Ac-

cording to Lynch, approximately thirty minutes elapsed between the time police entered the motel room and the time Clark provided statements. Clark does not specifically dispute this estimate, nor does he claim that he asked to speak with a lawyer or that his statements were otherwise not voluntary.

## II. ANALYSIS

Clark moves to quash his arrest and to suppress all evidence seized as fruits of the arrest, including physical evidence and any statements made to police by defendant following the arrest. Clark bases his motion on two grounds, each of which alleges a violation of defendant's Fourth Amendment rights: (1) that police did not have probable cause to arrest Clark without a warrant; and (2) that Clark did not consent to the entry of his motel room by police, and no exigent circumstances justified such entry without consent. The magistrate judge found the existence of both probable cause and valid consent to police entry. Clark objects to both findings.

### A. Probable Cause

Clark argues that when police approached Room 328 they had no more than a reasonable suspicion that he was involved in the blackjack scam. He points out that the officers and Hang had not heard of Clark before that night and did not even give him an opportunity to identify himself before apprehending him.

▮ The basic rule remains that, in order to make an arrest without a warrant, the police must have probable cause to reasonably believe that a particular individual has committed a crime. *United States v. Rucker,* 138 F.3d 697, 700 (7th Cir.1998). A probable cause determination requires an evaluation of the "totality of the circumstances" and is a "fluid concept—turning on the assessment of proba-

---

1. Sears was eventually released once the officers determined she was not part of the    blackjack scheme.

bilities in particular factual contexts." *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 238, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ As noted by Magistrate Judge Goodstein, police knew the following things before they arrested Clark in Room 328:(1) Lee came to Appleton to conduct a rigged blackjack game; (2) Lee was staying in one of three rooms rented to Clark, two of which had already turned up gaming participants and materials; (3) one player in the blackjack scenario—Hang's would-be opponent, potentially a rich man from California—was still unaccounted for; and (4) like Lee, Clark was from Sacramento.

I agree with the magistrate judge that, based on this information and under the above legal standard, police had probable cause to arrest Clark. Ideally, perhaps, the officers could have verified that Clark was in fact Clark before telling him to hit the floor, but at 3 a.m. the presumption that the man who rented the room was behind the door was understandably a strong one. Clark's first objection therefore fails.

## B.  Valid Consent

Clark next objects that his arrest was illegal because he did not give valid consent for police to enter his motel room. In his objections, Clark relies primarily on *United States v. Lindsay,* 506 F.2d 166 (D.C.Cir.1974), which is at best persuasive authority. I will not discuss *Lindsay,* however, because defendant's position is supported by more pertinent direct authority in this circuit.

■ In general, even if police have probable cause to arrest someone, they may not enter that person's home to effectuate the arrest without a warrant unless exigent circumstances exist. *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Motel guests are entitled to the same constitutional protection in this regard as house tenants or boarding house occupants. *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856, 11 L.Ed.2d 856 (1964). The government presented no testimony at the

hearing to establish the existence of exigent circumstances surrounding Clark's arrest. In this situation, as the parties and magistrate judge agree, Clark's arrest was constitutionally sound only if he gave valid consent for the officers to enter Room 328.

*Payton* directly addresses whether and under what circumstances police may enter a suspect's home to make a warrantless arrest. Implicit in the *Payton* analysis is the assumption that entry pursuant to valid consent satisfies constitutional requirements, even where a warrant is lacking. *See Payton,* 445 U.S. at 583, 100 S.Ct. 1371 ("Finally, in both cases we are dealing with entries into homes made without the consent of any occupant."); *cf. Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

In analyzing the facts of this case, the magistrate judge focuses on the ramifications of the deceptive response given by police when Clark asked who was at the door.

> The undisputed evidence reveals that Clark consented to the entry into his motel room, but also that Clark thought the officers were the motel manager when he consented to entry. Thus, the issue is whether the officers' deception regarding their identity vitiates the otherwise voluntary nature of Clark's consent to the officers' entry into his motel room.

(Recomm. at 7.) Framing the matter in this way, the magistrate judge then discusses *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), in which the Supreme Court held that the Fourth Amendment was not violated when a federal narcotics agent, posing as a drug buyer, was invited into petitioner's home to purchase marijuana and the government later sought to introduce the drugs as

evidence at trial. *Id.* at 206–07, 87 S.Ct. 424. The Court's primary rationale in *Lewis* was that petitioner had converted his home into a commercial place and was transacting unlawful business, and that therefore the home was entitled to no greater protection than any other public place of business. *Id.* at 211, 87 S.Ct. 424.

The magistrate judge also relies on *United States v. Ressler,* 536 F.2d 208 (7th Cir.1976), and *United States v. Scherer,* 673 F.2d 176 (7th Cir.1982), cases applying and expanding the *Lewis* holding in this circuit. I agree that *Ressler* and *Scherer* are relevant and controlling here, but disagree that these cases compel the conclusion that Clark's Fourth Amendment rights were not violated. In fact, *Ressler* compels the opposite conclusion.

In *Ressler,* two undercover officers gained entry into petitioner's house by dropping his nickname, "Cory," to the woman who answered the door. *Ressler,* 536 F.2d at 210. After entering, one of the officers offered to trade several handguns for rifles or shotguns. Petitioner and others present produced several firearms in response to this offer, and the undercover officers noted distinguishing marks on the weapons. Later, that information formed the basis for a search warrant for the house. Firearms seized in the subsequent search led to petitioner's conviction. *Id.* at 211. Petitioner argued that the evidence should have been excluded at trial because it was the fruit of the officers' initial warrantless, nonconsensual "search."

The *Ressler* court rejected the conclusion that the latitude afforded by *Lewis* to undercover operators applies only in situations where the officer is invited inside for the express purpose of engaging in illegal activity:

> We do not read *Lewis* so narrowly. In our view, the rationale of the decision is that an entry by an undercover agent is not illegal if he entered for the "very purposes contemplated by the occupant."
>
> When an agent assumes a particular pose in order to gain entry into certain

premises and then obtains information by engaging in an activity not generally expected of one assuming that pose, that information is illegally obtained. Thus, an agent may not enter a premises as an acquaintance of the owner and conduct an unauthorized general search of the premises....

> ....

> Under this reading of *Lewis,* the initial entry of the agents in the case at hand did not violate the defendant's Fourth Amendment rights since the agents did not engage in any conduct not contemplated by the residents when they consented to their entry. They merely entered the house and stood in the front room in the presence of the residents as would anyone admitted.

*Id.* at 211–12 (internal citations omitted). Similarly, in *Scherer* two undercover agents were invited onto defendant's property to build duck blinds, but were given broad permission by defendant's wife to look around the barn for building materials. In the barn, they found two submachine guns. *Scherer,* 673 F.2d at 181–82. The Seventh Circuit held that the guns were lawfully obtained evidence because the agents, in rooting around the barn, "did not exceed the scope of [their] invitation." *Id.* at 182.

■ Turning to the facts of this case, it appears obvious to me that, even assuming police were "invited" into Room 328, they greatly exceeded the scope of their invitation. Unlike the agents in *Ressler* and *Scherer,* whose actions upon entering were by all appearances consistent with their adopted personae, the officers in Appleton entered Room 328 by claiming to be the motel manager and then performed the very un-manager-like activity of drawing their guns and arresting Clark. Thus, the key reasoning of both *Lewis* and *Ressler*—that officers admitted under false pretenses must hew to the "very purposes contemplated by the occupant"—supports the conclusion that Clark's Fourth Amendment rights were violated by the police

behavior in this case. *See Lewis,* 385 U.S. at 211, 87 S.Ct. 424, *Ressler,* 536 F.2d at 211.

While I do think my conclusion is consistent with *Ressler,* I would analyze the facts of this case under a different line of precedent that compels the same conclusion by challenging the idea that Clark, in simply opening the door, invited or "consented" to entry in any meaningful way.

In *United States v. Berkowitz,* 927 F.2d 1376 (7th Cir.1991), several IRS agents with probable cause but no warrant went to defendant's home to arrest him. The agents knocked. Defendant opened the door. *Id.* at 1380. The agents, who never misrepresented their identities, announced their intentions. But a factual dispute remained as to whether the agents crossed the threshold *before* or *after* telling defendant they had come to arrest him. The distinction, seemingly slight, was not overlooked by the court; the Seventh Circuit remanded for an evidentiary hearing. *Id.* at 1386–88. Citing *Payton,* the court noted:

> there is no place where a person's expectation of privacy is greater than in his own home. A person does not abandon this privacy in his home by opening his door from within to answer a knock. Answering a knock at the door is not an invitation to come in the house. We think society would recognize a person's right to choose to close his door on and exclude people he does not want within his home. This right to exclude is one of the most—if—not the most—important components of a person's privacy expectation in his home.

*Berkowitz,* 927 F.2d at 1387 (internal citation omitted).

■ *Berkowitz* and similar cases from other circuits involving threshold arrests after the door is opened in response to affirmative police action take pains to distinguish their facts from those of *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In that case, the Supreme Court held that a warrantless arrest of a person standing in the open doorway of her home is permissible because the open doorway is a public place where one has no expectation of privacy. *Id.* at 42, 96 S.Ct. 2406. In contrast, when police knock or otherwise act to induce defendant to open the door, the open threshold is not instantly converted into a public place. This is especially true when the inducement has been an affirmative misrepresentation by police as to their identity. *See United States v. Johnson,* 626 F.2d 753, 757 (9th Cir.1980) ("[I]t cannot be said that Johnson voluntarily exposed himself to warrantless arrest by opening his door to agents who misrepresented their identities."); *United States v. McCraw,* 920 F.2d 224, 229 (4th Cir.1990) ("By opening the door only halfway, Mathis did not voluntarily expose himself to the public to the same extent as the arrestee in *Santana.* He certainly did not consent to the officers' entry into his room to arrest him."). Nor does a suspect's failure to promptly shut the door once he appreciates that police are outside amount to tacit consent to entry, particularly if officers display their guns and announce their intention to arrest him. *United States v. Edmondson,* 791 F.2d 1512, 1515 (11th Cir.1986) ("A suspect does not consent to being arrested within his residence when his consent to the entry into his residence is prompted by a show of official authority.").

Based on *Berkowitz* and similar holdings in other circuits, and bolstered by the rationale of *Ressler,* I conclude that Clark did not give valid consent for police to enter his motel room and that the resulting arrest violated his Fourth Amendment protections against unreasonable searches and seizures.

## C. Suppression of Evidence

■ Evidence gathered through a chain of causation starting with an illegal arrest may be inadmissible, depending on whether it was obtained "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the

primary taint." *United States v. Ienco,* 182 F.3d, 517, 525–26 (7th Cir.1999) (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Three factors determine whether the causal chain is sufficiently attenuated to dispel the taint of an illegal arrest: (1) the time elapsed between the illegal action and the seizing of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.*

▮ In this instance, the factual findings of the magistrate judge indicate that the officers' searched Room 328 and seized $4000 in cash more or less immediately after entering the room and arresting Clark. Thus, it appears that no time elapsed between the illegal arrest and the search pursuant to arrest, and no intervening circumstances exist. Based on the above factors, the $4000 and any other physical evidence seized in the search of Clark's motel room must be suppressed. *See Ienco* at 525–27 (finding that four-hour time lapse and intervening formal arrest at police station did not dispel taint of illegal arrest).

Clark also argues that his statements to police following his arrest should be suppressed. The same three factors listed above govern the admissibility of a confession made following an illegal arrest. *See Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). The government bears the burden of proving that a confession is admissible under these circumstances. *Id.*

According to the magistrate judge, the testimony at the hearing regarding Clark's statements was cursory, and the papers before the court are somewhat unclear as to whether the statements in question were made at the motel room or after Clark was transferred to the police station. Clark himself is not specific and merely asks that "any statements, admissions and/or confessions made by the defendant" be suppressed. (Def.'s Mot. to Suppress at 1.) The factual findings of the magistrate judge do indicate that thirty minutes elapsed after the arrest before Clark provided statements to police and that Clark was informed of his *Miranda* rights before offering any statements.

▮ Though minimal, this information persuades me that the statements must be suppressed. Thirty minutes is a relatively short period in the wake of an illegal arrest, and the Supreme Court has been quite clear that *Miranda* warnings alone do not constitute a significant intervening circumstance. *See Taylor,* 457 U.S. at 691, 102 S.Ct. 2664 (six-hour custodial detention and three readings of defendant's *Miranda* rights did not dispel taint of illegal arrest); *Brown v. Illinois,* 422 U.S. 590, 602–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (lapse of time of less than two hours and multiple *Miranda* warnings did not break connection to illegal arrest). *Cf. Holland v. McGinnis,* 963 F.2d 1044, 1050–51 (7th Cir.1992) (transfer of petitioner to different city and into the custody of different officers cured taint of illegally obtained first confession); *United States v. Patino,* 862 F.2d 128, 132–33 (7th Cir.1988) (six days in which suspect was not in custody and was not contacted by police purged taint of initial illegality). The government has presented no evidence that Clark's statements were motivated by any "prearrest event" so as to mitigate the relative swiftness of his statements to police. *See Dunaway v. New York,* 442 U.S. 200, 220, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (Stevens, J., concurring). Finally, while it is true that the police here did not flagrantly or physically abuse Clark and that his statements were given "voluntarily" for Fifth Amendment purposes, these factors expressly do not cure the illegality of the initial arrest. *Taylor* at 693, 102 S.Ct. 2664.

However, I note that although Clark's statements are suppressed I limit my ruling to statements made by Clark approximately thirty minutes after the officers entered his motel room to arrest him. If defendant seeks the suppression of statements made after more time had elapsed,

a better factual record must be established before this court.

Based on the foregoing analysis,

**IT IS HEREBY ORDERED** that Clark's motion to suppress is **GRANTED** and that all physical evidence obtained in the search of Room 328 following Clark's arrest and all statements made by Clark to police within approximately thirty minutes of the arrest are excluded.

**IT IS ALSO ORDERED,** pursuant to the recommendation of the magistrate judge, that defendant Seng Xiong's motions to sever and to suppress are **DENIED WITHOUT PREJUDICE.**